EDWARD OEHLER, Appellant, *vs.* CHARLES LEVY, Appellee.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

INJUNCTION—*when court's decision that an injunction has not been violated will not be disturbed.* So long as an injunction against conducting a business in an offensive way is in force the defendant must observe it strictly, but the decision of the trial court, upon affidavits of the respective parties and their witnesses, that the injunction has not been violated will not be disturbed by a court of review unless it is clearly and palpably contrary to the evidence so heard.

APPEAL from the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE A. DU-PUY, Judge, presiding.

SAMUEL B. KING, and JULE F. BROWER, for appellant.

CHURCH, SHEPARD & DAY, and FRED BERNSTEIN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant, Edward Oehler, who is the owner of certain lots in the city of Chicago, obtained an injunction against the appellee in 1908, in the superior court of Cook county, enjoining appellee from doing certain acts or producing certain conditions in the conduct of the stable on premises owned by him immediately north of the premises owned by appellant, which premises of appellant consist of a three-story brick flat-building containing ten flats used for dwelling apartments. On appeal by Charles Levy (who is appellee here) to the Appellate Court that court held appellant, Oehler, was entitled to an injunction but that the injunction granted by the superior court was too indefinite, and the decree of the superior court was reversed and the cause remanded, with directions to that court to

enter a decree perpetually enjoining the defendant there, Charles Levy, from maintaining, or permitting to be maintained, on his property mentioned, a stable for horses in such numbers or in such manner as to produce noise sufficient habitually to disturb the sleep or comfort of the dwellers in the building owned by the complainant in that suit, Edward Oehler, (appellant here,) or so as to produce odors or gases deleterious to the health or comfort of the dwellers in said building, or to so conduct the business on said premises as to cause, by the noise and loud talking incident thereto, habitual disturbance to the health, sleep or comfort of said dwellers. (*Oehler* v. *Levy,* 139 Ill. App. 294.) Levy appealed from the judgment of the Appellate Court to this court, where the judgment of the Appellate Court was affirmed. (*Oehler* v. *Levy,* 234 Ill. 595.) An injunction in compliance with the directions was entered by the superior court December 21, 1908. On the 6th day of July, 1909, Edward Oehler filed his petition in the superior court of Cook county for a rule against appellee to show cause why he should not be punished for contempt for violation of said injunctional order. The matter was heard by the chancellor upon affidavits and the rule was discharged. The appellant prosecuted an appeal from the order discharging the rule, to the Appellate Court for the First District. That court affirmed the judgment, granted a certificate of importance, and the cause is brought to this court by appeal.

The petition of appellant for the rule was under oath, and stated that appellee had for a considerable period of time disregarded and violated said injunction; that he had increased the number of horses kept in his stable six more than he had when the injunction was granted; that the noises made by the horses stamping and kicking in the stable, and the odors from said horses and horse manure, were a constant source of annoyance to persons living in appellant's building, interfered with their sleep and rest

and with the proper use of their apartments. In support of his petition and affidavit appellant filed the affidavits of five persons occupying four different apartments, as tenants, in his said flat-building. They all stated in their respective affidavits that disagreeable odors of horses and horse manure emanating from appellee's stable entered their respective apartments, causing them discomfort and annoyance, and that in warm weather especially they were obliged to keep their windows closed for the purpose of keeping the disagreeable odors out of their apartments. They stated the odors were worse in 1909 than they were in 1908. Three of them stated they were also disturbed by the stamping and kicking of the horses in the stable, while two of them stated that their apartments were situated so far back in appellant's building that they either did not hear the noises or they were not plain enough to disturb the parties.

Appellee, in his answer, under oath, to the petition, denied that he had violated the injunction, and averred he had at great labor and expense made substantial changes and improvements for the conduct of his business in said stable for the purpose of complying with the injunctional order of the court; that to prevent noise of horses' feet he had removed all the horses but two from the upper floor to the basement; that he had covered the floors of their stalls with shavings four to six inches deep, so that no noise is now made that can be heard outside the stable; that he had posted notices in his stable forbidding persons loitering on the premises, and forbidding the use of loud, profane or obscene language by all persons on the premises. He stated that before the injunctional decree was entered it had been the custom to remove manure from the stable to the yard in the rear and very close to appellant's building, but since said injunction was entered no manure had been placed in said yard but it was kept clean, and all manure has been daily placed in wagons stationed on the

lot north of appellee's stable and more than fifty feet from
the appellant's building and the manure removed therefrom
daily, except Sunday. He stated that no manure was al-
lowed to remain on the premises and no smell or odor from
that cause reached appellant's building. He also filed affi-
davits of eleven persons in support of his answer. Two of
said affiants resided in appellant's building, and stated that
they were not disturbed by noise or odors. One of these
was a roomer occupying a room at the south-east corner
of the building, which is more remote from the stable than
the apartments of those who filed affidavits in behalf of
appellant. Another one of the affiants occupied apartments
in the wing extending south from the west end of appel-
lant's flat-building and was in the most remote part of the
building from the stable, which did not extend as far back
from the street line as appellant's building. Four others
live in a building known as 408 South Winchester avenue,
which building faced west on the next street west of Lin-
coln street, upon which appellant's and appellee's buildings
faced. Said four affiants stated their building was about
seventy-five feet from appellee's stable. In the rebuttal af-
fidavit filed on behalf of appellant, affiant states he had
measured the distance between his stable and the building
at 408 South Winchester avenue and that the distance be-
tween them is 118 feet. In one affidavit Ida Mueller tes-
tified she resided in the appellant's building and was not
disturbed by noise and odors. In another affidavit she
stated her senses of smell and hearing were greatly im-
paired and had been for several years. Hugo Kundinger
stated in an affidavit that he slept in a room at 774 Polk
street, about fifty feet north of appellee's premises; that
he had not been disturbed by noise or odors and that he
kept the windows of his room open. In a rebuttal affidavit
on behalf of appellant the affiant stated he had measured
the distance between the premises at 774 Polk street and
appellee's stable and that it was eighty-one feet, and be-

tween the two buildings were a sixteen-foot alley and a
barn next to the stable, in which, as we understand it, ap-
pellee kept his wagons. In the affidavit of Edward Ger-
lach he stated he was bar-tender at 774 Polk street, where
he has worked almost every day; that the doors and win-
dows of the place were always open in the summer; that
he never noticed any odors from appellee's premises; that
they were always kept in a clean condition and that he
had not within a year been annoyed by the noise of stamp-
ing of horses. Two other affidavits on behalf of appellee
related more particularly to the cleanliness of the premises
and the manner in which shavings were used to deaden
noise. They stated the stable was kept clean and free
from odors and horse manure, and the floors so deadened
with shavings that sounds of stamping horses could not be
heard outside the building.

It will be seen from the affidavits that they were quite
conflicting and that the correct determination of the issue
was not without difficulties. We agree with the Appellate
Court that it would have been more satisfactory and have
tended to simplify the decision of the question if instead
of affidavits oral testimony had been resorted to under the
provisions of section 86 of the Practice act. Appellant in-
sists, and in some measure we think with reason, that some,
at least, of the affidavits filed in support of the petition
were made by persons occupying better positions for ob-
serving the odors and noise to inhabitants in appellant's
building than were most of the affidavits filed by appellee.
All of the affidavits filed in support of the answer were by
persons who lived near the stable or were frequent visitors
there and familiar with the condition in which it was kept.
Whatever our view might be if it had been submitted to
this court to determine the issue in the first instance, we
are satisfied from a careful examination of all the affidavits
that the decree of the superior court was not so palpably
contrary to the evidence that as a reviewing court we would

be justified in reversing the decree of that court. So long as the injunction is in force it is the duty of appellee to observe it and to conduct his business strictly in accordance with the requirements of said injunctional order, but the court granting the injunction having determined, upon a consideration of all the evidence submitted, that appellee had not violated it, we are unable to say, from the record presented to us, that such determination is clearly and palpably contrary to the evidence.

The judgment of the Appellate Court will therefore be affirmed.                               *Judgment affirmed.*