THE PEOPLE *ex rel.* ILLINOIS STATE DENTAL SOCIETY *et al.*, Plaintiffs-Appellees, *v.* WILLIAM NORRIS, Indiv. and d/b/a Pullman Dental Laboratory, Defendant-Appellant.

First District (3rd Division)   No. 78-578

Opinion filed December 31, 1979.

Sheldon Gardner and Richard Kuhlman, both of Foss, Schuman & Drake, of Chicago, for appellant.

Russell Pelton and Pat Chapin, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

This action was brought on June 27, 1977, by the People of the State of Illinois upon the relation of the Illinois State Dental Society (Society) and Robert L. Straub, John L. Manning, Thomas R. Case and Weston O. Olsen, individually and as officers and directors of the Society. The plaintiffs filed a petition for rule to show cause why the defendant, William L. Norris, individually and doing business as Pullman Dental Laboratory, should not be found guilty of contempt of court for having violated a permanent injunction which enjoined him from practicing dentistry as defined in section 5 of the dental practice act (Ill. Rev. Stat. 1967, ch. 91, par. 60). The court, sitting without a jury, found the defendant guilty of contempt, sentenced him to 10 days' confinement in the Cook County jail and fined him $100.

On appeal the defendant raises the following issues: (1) whether the underlying 1968 injunction against the defendant lapsed before the plaintiff filed its petition for rule to show cause; (2) whether the defendant was proved guilty beyond a reasonable doubt of the unauthorized practice of dentistry; (3) whether the trial court improperly failed to consider the defendant's affirmative defense; (4) whether the defendant's sentence was based on improper and unsubstantiated findings of fact; (5) whether the plaintiff introduced adequate evidence to substantiate its bill of costs; and (6) whether the defendant was improperly barred from taking the depositions of the individually named plaintiffs.

The writ of permanent injunction was issued on January 10, 1968,

pursuant to a consent decree of injunction entered on December 29, 1967. The writ specifically prohibited the defendant from:

"(a) Engaging in the practice of dentistry without a license;

(b) Representing to the public by telephone directory listing, business card, sign, or any other means or media that you are able to diagnose, treat, or prescribe for deficiencies or physical conditions of any part of the human mouth;

(c) Managing, operating, conducting, or being proprietor of a place of business where dental operations are performed directly with the public, either under your individual name or under the name of a company or trade name;

(d) Performing dental operations of any kind directly for the general public, gratuitously or for a fee, gift, compensation or reward, paid or to be paid, either to yourself or to another person or agency;

(e) Offering or undertaking, by any means or method to diagnose or treat conditions of the human mouth, teeth or jaws;

(f) Taking impressions of the human tooth, teeth, or jaws or performing any phase of any operation incident to the replacement of a part of a tooth, a tooth, teeth or associated tissues, by means of a filling, a crown, a bridge, a denture or other appliance;

(g) Furnishing, supplying, constructing, reproducing or repairing, or offering to furnish, supply, construct, reproduce or repair prosthetic dentures (sometimes known as 'plates'), bridges, or other substitutes for natural teeth, to the user or prospective user thereof;

(h) Performing any clinical operation included in the curricula of recognized dental schools and colleges;

(i) Practicing dentistry under the name of a company, corporation, association or trade name;

and from otherwise practicing dentistry in any form; either directly or indirectly, or from holding yourself out as having the right to practice dentistry and from charging and collecting fees, commissions, wages, or payments in any form for any dental services whatsoever rendered or to be rendered by you or any other person in your behalf to the general public."

The plaintiffs' petition for rule to show cause alleged that the defendant had violated the 1968 injunction by the commission of certain acts on or about the dates of November 10, 15, 19, 1976, and December 3, 4, 11, 18, 1976. Attached to the petition were the affidavits of Ann Jankuski and Mary Jo Barnett, investigators paid by the Society.

Mary Jo Barnett testified on direct examination that she called the Pullman Dental Laboratory on November 3, 1976, for an appointment to

have a denture made. She said she "believed" the defendant answered the phone and gave her an appointment for November 4, 1976. When she arrived for her appointment, she met the defendant and discussed the price of the services. She was taken into a small office in the lab and seated in a dental chair. Barnett said an impression of her mouth was taken by the defendant and Doctor Fischer, a dentist. She testified that Doctor Fischer examined her mouth and stated the bottom teeth had to be fixed and that the defendant said her lower plate "was pretty bad."

Barnett testified that on her second visit, which she thought to be November 7 or two days after her previous visit, the defendant placed a denture into her mouth and checked the fit. She then paid $90 in cash and was given a receipt. On November 19 Barnett said the defendant showed her into the office and put the dental plate into her mouth. She testified there was a "bad spot" in the plate which the defendant ground down in another room. She was given the completed plate, paid the balance of $85 and received a second receipt.

On cross-examination Barnett was questioned concerning inconsistencies between her testimony at trial and her statements in her affidavit and deposition. Barnett reaffirmed her deposition statement that her affidavit contained all the information she had. She agreed that her affidavit did not indicate that she talked to the defendant when she called the Pullman Dental Laboratory to make her first appointment but said she believed this was reflected in her notes. An inconsistency in dates of appointments was also established. Although Barnett testified on direct examination that she had four appointments and mentioned November 4, 7 and 19, her affidavit set forth dates of November 4, 10, 12, 15 and 19. Sections of the deposition, referred to on cross-examination, concerned dates of November 10 and 12. On redirect the witness, after consulting her notes, said the dates of her visits were November 4, 10, 12 and 19.

Ann Jankuski testified on direct examination that in early December 1976 she called the Pullman Dental Laboratory, gave her maiden name, Ann Rundle, and received an appointment to have upper dentures made. She "believed" her first appointment was on December 3. She testified the defendant checked her mouth and said her bottom teeth were bad and that Doctor Fischer also looked at her mouth and took an impression of her mouth. Jankuski testified that the defendant gave her an appointment for the next day and told her to bring money. She returned on December 4 and said the defendant took a "bite" of her mouth with some red wax. The defendant also took some white material with a red wax top, asked her to bite down, and then gave her an appointment for the following Saturday. Jankuski testified she paid the defendant $80 in cash and was given a receipt. Jankuski stated that when she returned for her third appointment, which was on a Saturday, the defendant told her to go to

the back section of the laboratory and said he wanted to see how the teeth fit. She testified the defendant placed the tooth plate into her mouth, said the teeth were a little forward and pushed them back. He then took the teeth out of her mouth, left the room and returned with "some red wax or some material" on the plate. He put the teeth back into her mouth, asked her to bite and told her the teeth would be ready for her next appointment. Jankuski said she returned the following Saturday and at that time the defendant placed the plate in her mouth and said she was "hitting high on one side." She said the defendant took a black piece of paper, "carbon or something," placed it between the plate and her teeth and told her to bite. The defendant left the room twice with the teeth and returned to place them back in her mouth. The witness said she told the defendant the plate felt fine, paid him approximately $90 and was given another receipt. Jankuski further testified that with the exception of her first visit, she did not see Doctor Fischer.

Doctor Charles Fischer testified as a defense witness and said he had been licensed to practice dentistry for approximately 50 years. He said he rented office space from the defendant and that the front part of his dental office is also part of the Pullman Dental Laboratory. Doctor Fischer said the defendant helped him as a dental assistant but was not paid for those services. He testified that he had never seen the defendant take an impression and said the defendant mixed the materials for impressions but that he, not the defendant, took the impressions.

On cross-examination Doctor Fischer admitted that his name was misspelled by the defendant on the exterior sign for his office and on his printed receipts. Doctor Fischer also admitted that he often did not work on Saturdays. He identified his signature on the work orders for Barnett and Jankuski, said he did not know who completed the specifics on the orders but indicated that the work orders would have been completed per his instruction. He admitted signing several work orders in blank and leaving them on a desk.

The defendant testified that he worked as a dental technician performing laboratory work for Doctor Fischer pursuant to work orders and that he aided Doctor Fischer as a dental assistant. He admitted mixing materials for taking impressions but stated everything he did for Doctor Fischer was under the doctor's supervision and that Doctor Fischer was always in the same room or nearby. On cross-examination, the defendant admitted his handwriting appeared on the work orders for Barnett and Jankuski. He stated that he was the owner, operator and sole proprietor of the Pullman Dental Laboratory.

On the basis of the evidence presented, the trial court found the defendant violated the writ of injunction by willfully committing the following acts:

"(A) On or about November 4, 10, 12 and 19, 1976 and December 3, 4, 11 and 18, 1976, the respondent, WILLIAM L. NORRIS, engaged in the practice of dentistry without a license.

(B) On or about the same dates the respondent, WILLIAM L. NORRIS, represented to the public that he was able to diagnose, treat and prescribe for deficiencies of the human mouth.

(C) On or about the same dates the respondent, WILLIAM L. NORRIS, operated and was the proprietor of a place of business where dental operations were performed directly to the public under his name, doing business as the PULLMAN DENTAL LABORATORY.

(D) On or about November 4, 10, 12 and 19, 1976 and December 3, 4, 11 and 18, 1976, the respondent, WILLIAM L. NORRIS, offered directly to the user to personally furnish, construct and adjust prosthetic dentures for natural teeth.

(E) On or about November 10, November 19, December 3, December 4, December 11 and 18, all in 1976, respondent, WILLIAM L. NORRIS, undertook to diagnose and treat conditions of the human mouth and jaws.

(F) On or about November 10, November 19, December 4, December 11, December 18, all in 1976, respondent, WILLIAM L. NORRIS, took impressions of the human jaws and performed operations incidental to the replacement of teeth and associated tissues by means of a denture.

(G) On or about November 19, December 11 and December 18, 1976, the respondent, WILLIAM L. NORRIS, adjusted and repaired prosthetic dentures for natural teeth to the user thereof."

■■■ On appeal the defendant first argues that the 1968 writ of injunction lapsed and became unenforceable because the injunction judgment had not been renewed by the plaintiffs through *scire facias* or other proceedings within seven years of its issuance. The defendant further contends that since the injunction expired prior to November of 1976, he should not have been subjected to contempt proceedings for acts allegedly committed in November and December of that year. We disagree. An injunction remains in full force and effect until it has been vacated or modified by the court which granted it or until the order or decree awarding it has been set aside on appeal. (*Keck v. Keck* (1972), 8 Ill. App. 3d 277, 290 N.E.2d 385, *rev'd on other grounds* (1974), 56 Ill. 2d 508, 309 N.E.2d 217.) Such a decree or order must be obeyed, even if erroneous, until it is overturned or modified by orderly processes of review. (*Benson v. Isaacs* (1961), 22 Ill. 2d 606, 177 N.E.2d 209; *People v. Mulgrew* (1974), 19 Ill. App. 3d 327, 311 N.E.2d 378.) An injunction can be modified or dissolved when the court finds that the law has changed or

that equity no longer justifies a continuance of the injunction. (*Flynn v. Kucharski* (1972), 53 Ill. 2d 88, 290 N.E.2d 1; *Benson v. Isaacs; Field v. Field* (1967), 79 Ill. App. 2d 355, 223 N.E.2d 551.)

■■ In the instant case the defendant was served with a permanent injunction writ on January 12, 1968. He did not appeal the procedural or substantive aspects of the writ within 30 days of the entry of the order. (Ill. Rev. Stat. 1967, ch. 110A, par. 303). Nor does it appear from the record that the defendant sought to have the injunction vacated or modified due to changed conditions. Therefore, the injunction prohibiting the defendant from practicing dentistry remained valid and any violation thereof subjected the defendant to contempt proceedings.

The defendant next contends that he was not proved guilty beyond a reasonable doubt of the unauthorized practice of dentistry in November and December 1976. To support this contention the defendant argues that the testimony of Barnett concerning his activities in November 1976 was less than credible since it was inconsistent with her affidavit attached to the petition for rule to show cause and her deposition. The defendant also questions the credibility of Ann Jankuski because she admitted giving false information during her dental appointments.

■■ It is well settled that the trier of fact determines the weight and credibility of witnesses (*People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331; *People v. Mytnik* (1978), 66 Ill. App. 3d 624, 384 N.E.2d 435; *People v. Gunderson* (1978), 66 Ill. App. 3d 516, 383 N.E.2d 1296), and the factual determinations of the trier of fact are to be afforded substantial consideration (*People v. Ivy* (1979), 68 Ill. App. 3d 402, 386 N.E.2d 323). The reviewing court will disturb the trial judge's findings when the judgment is not sustained by the evidence or the evidence is so improbable, unsatisfactory or inconclusive as to raise a reasonable doubt of guilt. *People v. Ellis; Oehler v. Levy* (1912), 256 Ill. 178, 99 N.E. 912; *People v. Gunderson.*

Although there was inconsistency about the dates of her appointments, the substance of Barnett's testimony, that is, the actions of the defendant during her appointments, was not contradictory and substantially supports the court's findings that the defendant committed all of the activities alleged. With regard to the evidence presented by witness Jankuski, her testimony was never impeached, nor did it differ from her affidavit attached to the petition. Although this witness had been admonished for giving narrative answers, we find no error in the trial court's reliance on her testimony as proof of additional violations by the defendant on December 3, 4, 11 and 18, 1976. We also do not feel that her giving of false information to the defendant during her dental appointments affected her credibility at trial.

To further support the trial court's finding of the defendant's guilt beyond a reasonable doubt, we note the testimony by Doctor Fischer and the defendant himself. Doctor Fischer testified that he signed work orders in blank, that he was often absent from the premises on Saturdays, and that the defendant had the doctor's exterior sign and receipts printed. Doctor Fischer further testified that one of the operating rooms used by his patients was located in the Pullman Dental Laboratory. The defendant gave conflicting statements regarding the existence of a dental chair in his laboratory. In his deposition he stated he provided a "courtesy room" in his lab for use by Doctor Fischer, but on cross-examination at trial stated the room, which was rent-free, was not in the laboratory. The defendant also admitted that he was the owner, operator and sole proprietor of the Pullman Dental Laboratory and that he was doing business as the Pullman Dental Laboratory during November and December 1976.[1]

Based on the above, we do not believe the decision reached by the trial court was palpably contrary to the evidence nor do we believe that the evidence was so improbable, unsatisfactory or inconclusive as to raise a reasonable doubt of guilt. Therefore, we will not disturb the judgment.

The defendant next contends that the court improperly failed to consider his affirmative defense that he was acting as Doctor Fischer's dental assistant during the visits of the investigators hired by the plaintiffs. As provided in the dental practice act, an individual can perform certain dental services, without violating the act, provided such services are performed under the direction and immediate supervision and full responsibility of a licensed dentist. (Ill. Rev. Stat. 1975, ch. 91, par. 60(f).) The defendant contends that his affirmative defense was established by his testimony and the testimony of Doctor Fischer. Both had testified that the defendant had been certified as a dental assistant and that the defendant helped Doctor Fischer occasionally when a nurse was not present. The defendant also testified that when he functioned as a dental assistant Doctor Fischer was always nearby or within calling.

■■ ■ In the instant case the Society had the burden of proving the defendant guilty beyond a reasonable doubt. (*United States v. Balaban* (N.D. Ill. 1939), 26 F. Supp. 491.) It is well-settled law that in a criminal case the burden of proof never shifts to the defendant; and when the defendant asserts an affirmative defense, he does not assume the burden of proof but must, however, introduce enough evidence on the subject to raise a reasonable doubt as to his guilt. *People v. Adcock* (1975), 29 Ill.

---

[1] Based on these admissions, it appears that the trial court reinstated the charges stricken pursuant to defendant's motion after plaintiffs rested, that the defendant operated and was the proprietor of a place of business where dental operations are performed directly to the public and that he was doing business as the Pullman Dental Laboratory.

App. 3d 917, 331 N.E.2d 573; *People v. Espenscheid* (1969), 109 Ill. App. 2d 107, 249 N.E.2d 866; *People v. Williams* (1965), 56 Ill. App. 2d 159, 205 N.E.2d 749.

While the evidence at trial was conflicting as to whether the defendant performed dental services under the supervision of Doctor Fischer, we will not substitute our judgment for that of the trial court since the weight of the evidence and credibility of the witnesses is strictly within the competence of the trier of fact. (*People v. Ellis; People v. Mytnik; People v. Gunderson.*) At the conclusion of the trial the judge indicated that he had considered the statutory section of the dental practice act relating to dental assistants and that he concluded that the defendant's actions were not the acts of a dental assistant. We cannot say that this conclusion is erroneous or that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt.

The defendant's fourth argument on appeal was captioned that the defendant's sentence was based upon improper and unsubstantiated findings of fact. This argument, however, appears to concern the issues of burden of proof and relevancy. The defendant contends that the court erroneously placed the burden of proof on him to show sufficient excuse for disobeying the writ of injunction. As discussed above, in a contempt proceeding, which is criminal in nature, the plaintiff has the burden of proving guilt beyond a reasonable doubt. However, the reason for the issuance of a rule to show cause and subsequent hearing in a contempt action is to give the defendant an opportunity to show, if he can, compliance with the prior court order. (*People ex rel. Olsen v. Templeman* (1932), 265 Ill. App. 369.) Thus, the trial judge's statement at the conclusion of the hearing that "the defendant has failed to show sufficient excuse for disobeying said writ of injunction and decree" appears to be a recitation of the rationale for the contempt finding, not an indication that the burden of proof had been shifted to the defendant.

The defendant also alleged that he was held responsible for the failures of Doctor Fischer and that the court erred in striking certain evidence upon the Society's objection of relevancy. In view of the evidence presented, we do not feel that the defendant was wrongfully accused by the Society nor do we feel that the trial court erred in striking testimony concerning the Society's prior lawsuit against Doctor Fischer and an alleged statement made to Doctor Fischer that the Society was "out to get" the defendant. In order to determine whether evidence is admissible, the trial court must determine whether the evidence is relevant, material and competent. (*People v. Pickett* (1975), 34 Ill. App. 3d 590, 340 N.E.2d 259.) A trial court has the right to refuse evidence which will serve no useful purpose or which is incompetent to prove a

material issue. (*People v. Lewis* (1976), 38 Ill. App. 3d 995, 349 N.E.2d 528.) The only issue involved in a contempt proceeding alleging violation of an injunction is whether the injunction has been violated. (*Anderson & Lind Manufacturing Co. v. Carpenters' District Council* (1923), 308 Ill. 488, 139 N.E. 887; *People v. Spounias* (1959), 20 Ill. App. 2d 184, 155 N.E.2d 326.) Since the evidence presented by the defendant would not prove the material issue in the case, that is, whether the defendant violated the 1968 injunction, it was properly excluded by the trial court.[2]

The fifth issue raised by the defendant was that the Society did not introduce adequate evidence to substantiate its bill of costs. The record shows that the Society's petition prayed for an award of attorney's fees and expenses as provided in section 17a of the dental practice act. (Ill. Rev. Stat. 1977, ch. 111, par. 2244.) The act states in pertinent part:

"In all proceedings hereunder the court, in its discretion, may apportion the costs among the parties interested in the suit, including cost of filing complaint, service of process, witness fees and expenses, court reporter charges, reasonable attorneys fees."

The Society filed its motion for award of costs and certificate alleging that it had incurred expenses of $2,533.90. The certificate set forth the following expenses: $175 for Ann Jankuski's dentures; $310.80 for Jankuski's investigative services; $175 for Mary Jo Barnett's dentures; $493.10 for Barnett's investigative services, and $1,400 for attorney's fees, 10 hours at $60 per hour and 20 hours at $40 per hour. In support of the Society's motion for costs, the Society's attorney testified under oath that of his own personal knowledge the Society incurred the investigative expenses, including the cost of dentures as set forth in the certificate and that checks were written in those amounts. He also testified that his firm billed the Society $1,400 which was the firm's usual and normal rate for services performed by himself and an associate. At the hearing on the motion, which was held at the request of the defendant's attorney, the defendant's attorney specifically stated that he would not cross-examine the Society's attorney regarding the conclusions relative to fees which the Society incurred.

In addition to the testimony indicated above, evidence was introduced during the course of trial which showed that the Society hired investigators and that the investigators each paid $175 for dental services, the receipts having been admitted into evidence. Therefore, in accordance with the statutory provision set forth above, it was clearly within the trial court's discretion to enter a judgment for costs for these fees

---

[2] As part of his fourth argument, the defendant also contended that the court's conclusions were unsupported by the evidence. Our response to this latter argument appears as part of the second issue.

and expenses against the defendant. *People ex rel. Illinois State Dental Society v. Iole* (1974), 19 Ill. App. 3d 894, 312 N.E.2d 328.

The defendant contends that he was not afforded any meaningful cross-examination at the hearing on the award of costs and relies on *Adams v. Silfen* (1951), 342 Ill. App. 415, 96 N.E.2d 628; *In re Estate of Palm* (1973), 11 Ill. App. 3d 24, 295 N.E.2d 580; and *Larkin Bank v. Ishak* (1976), 43 Ill. App. 3d 918, 357 N.E.2d 840. These cases are distinguishable from the instant case. In *Adams* the defendant was not given an opportunity to cross-examine on the issue of costs. The plaintiff had filed a sworn petition long after trial which was passed upon ex parte by a judge who was not present at the original trial. In *Palm* this court reversed the trial court's award of costs incurred by reason of untrue pleadings and found that the original hearing on the award of costs was inadequate to determine what fees and costs were specifically caused by the appellant's false pleadings and remanded the case for a new hearing. In *Larkin Bank* the court rejected the award of costs for confession of judgment based on a minimum fee schedule since fee schedules were held violative of the Sherman Anti-Trust Act in *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004.

The defendant in the instant case was afforded, but declined, an opportunity to cross-examine the Society's attorney whose testimony was not hearsay evidence, as the defendant contends. The Society's attorney testified concerning his personal knowledge of the investigative fees paid by the Society as well as his personal knowledge of the attorney's fees. This attorney stated that he was one of two attorneys who worked on the case and could have cross-examined as to what specific legal work had been performed.

As his final argument on appeal the defendant contends that he was improperly barred from taking the depositions of four individual dentists captioned as individual plaintiffs and officers and directors of the Society on the petition for rule to show cause and in the original complaint for injunction in 1967. The defendant surmises that these individuals could have testified concerning such subjects as financial losses suffered by dentists because of the defendant's activities, why the Society elected to bring suit against the defendant, the need for public protection against high-priced dentures, and reputation, credibility and costs of the investigative agencies' services.

As stated above the only issue involved in contempt proceedings is whether the injunction has been violated. (*Anderson & Lind Manufacturing Co. v. Carpenters' District Council; People v. Spounias.*) Thus, with the exception of questions regarding the investigative agencies utilized in the prosecution of the defendant, the questions raised by the

defendant were irrelevant. The trial court, after hearing arguments of counsel, entered a protective order denying the defendant's right to take the depositions based on the representation of plaintiff's counsel that the four individually named plaintiffs had no knowledge of the facts raised in the petition for rule to show cause. We do not feel this finding was erroneous since the four dentists were not called as witnesses, did not submit affidavits and were not mentioned during the contempt hearing.

■■ ■ The defendant further contends that his right to depose any opposing party is unconditionally guaranteed by Supreme Court Rule 202. (Ill. Rev. Stat. 1977, ch. 110A, par. 202.) We cannot agree. Supreme Court Rule 202 must be viewed with the general discovery provisions set forth in Supreme Court Rule 201. (Ill. Rev. Stat. 1977, ch. 110A, par. 201.) The latter rule empowers the courts to deny, limit, condition and regulate discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage or oppression. (Ill. Rev. Stat. 1977, ch. 110A, par. 201(c)(1).) Thus, trial courts have broad discretionary powers to insure fair and orderly trials and can restrict pretrial discovery where probative value is lacking. (*Northern Trust Co. v. Continental Illinois National Bank & Trust Co.* (1976), 43 Ill. App. 3d 169, 356 N.E.2d 1049, *aff'd in part and rev'd in part on other grounds sub nom. Stuart v. Continental Illinois National Bank & Trust Co.* (1977), 68 Ill. 2d 502, 369 N.E.2d 1262.) The appellate court will not find error or set aside a ruling of the trial judge based on a discretionary matter unless there has been a clear abuse of discretion. (*City of Belleville v. Morgan* (1978), 60 Ill. App. 3d 434, 376 N.E.2d 704.) We find no abuse of discretion in the instant case.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.