Argued and submitted October 9, 1995, affirmed February 7, petition for review denied June 18, 1996 (323 Or 483)

STATE OF OREGON,
by and through the
Department of Human Resources,
ADULT AND FAMILY SERVICES DIVISION,
*Respondent,*

*v.*

NORTHLAND INSURANCE COMPANY,
a Minnesota Corporation,
*Defendant - Appellant,*

*and*

Donna BLAGG
and James Blagg,
guardians and conservators for
Douglas James Bragg,
an incapacitated person,
*Intervenor-Defendants - Appellants.*

(93C11273; CA A85957)

911 P2d 942

G. Phillip Arnold argued the cause for appellants. With him on the brief was Thad M. Guyer.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant Northland Insurance Co. appeals from the entry of summary judgment for plaintiff State of Oregon, foreclosing a Medicaid reimbursement lien. Third parties Donna and James Blagg also appeal, assigning error to the trial court's denial of their motion to intervene as defendants. We affirm.

The following facts are uncontroverted: On December 10, 1989, Medford police responded to a report of a fight at a convenience store. When they arrived, the officers found Douglas Blagg[1] lying on the ground suffering from a head injury. The convenience store clerk told the officers that Blagg had been hurt when he pulled a knife on another customer and was knocked to the ground. Blagg, who was "extremely intoxicated," refused medical treatment for his head injury. When an ambulance arrived, Blagg continued to refuse treatment. He was then transported to the Medford jail for an overnight detoxification hold.

The next morning, when officers went to release Blagg, they found him unconscious. Blagg was then taken to the Rogue Valley Medical Center, where he was treated by a surgeon, Dr. Campagna. Campagna diagnosed Blagg as suffering from "a massive epidural hematoma," and performed emergency surgery to release the pressure on Blagg's brain. Although Blagg survived, he suffered substantial permanent physical and mental impairment.

Because Blagg was indigent, the state Adult and Family Services Division (AFSD) paid the cost of his surgery and hospitalization through Medicaid payments totaling $30,526. On March 14, 1990, AFSD filed a notice of lien, which stated:

> "Notice is hereby given, that [AFSD] has rendered [Medicaid] assistance to Douglas Blagg, et al who sustained injuries on or about December 10, 1989 in or near Medford, Oregon and *[AFSD] hereby asserts a lien to the extent provided in ORS 416.510 to 416.610, for the amount of such assistance upon any amount due and owing the said Douglas Blagg, et al under a judgment, settlement or compromise from City of Medford, et al alleged to have caused*

---

[1] The putative intervenors, Donna and James Blagg, are Blagg's parents, guardians, and conservators.

*such injuries* and from any other person or public body, agency or commission liable for injury or obligated to compensate the injured person on account of such injuries." (Emphasis supplied.)

In September 1991, Blagg's parents, as his guardians, filed an action on his behalf against the City of Medford and individual police officers. The operative first amended complaint asserted a claim for negligence and a civil rights claim under 42 USC § 1983.[2] The amended complaint generally alleged that the officers had failed to provide Blagg with a medical examination, had failed to adequately monitor his mental and medical condition, and had ignored his complaints and requests for medical assistance. The amended complaint further alleged:

"(7)   As a result of defendants' failure to provide Blagg with reasonable medical care in the absence of a legitimate government purpose to the contrary and/or their deliberate indifference to his serious medical needs, he suffered the following injuries:

"a.   Extreme pain, suffering, and humiliation during the time he was confined in Medford City Jail, due to a epidural hematoma and other brain damage which later required neurosurgery.

"b.   Permanent damage to his mental, intellectual, psychological and emotional functioning, due to brain damage.

"c.   Pain and suffering on a permanent basis.

"d.   Interference with usual and everyday activities, on a permanent basis; and

"e.   Permanent impairment of earning capacity.

"(8)   As a result of defendants' failure to provide Blagg with reasonable medical care in the absence of a legitimate government purpose to the contrary and/or their deliberate indifference to his serious medical needs, plaintiffs sustained the following economic damages:

"a.   Medical and rehabilitative expenses to date, plus medical and rehabilitative expenses in the future on a permanent basis in the amount of $250,000; and

---

[2] The complaint alleged, *inter alia*, that the officers' conduct in failing to secure adequate medical care for Blagg violated his rights to due process of law under the Fourteenth Amendment.

"b.   Past and permanent future impairment of earning capacity, all to plaintiffs' economic damage in the sum of $160,000."

The prayer requested pain and suffering damages of $250,000, economic damages of $410,000, including $250,000 for "past and future health care costs," $100,000 in punitive damages, and other relief, including attorney fees.

In November 1992, the city's insurer, defendant Northland, settled Blagg's claims. The settlement agreement and release stated, in part:

"A.   * * * In the Complaint, Plaintiff sought to recover monetary damages related to that certain occurrence on or about December 10 and/or 11 at Medford, Oregon, which resulted in physical injuries and personal injuries to Douglas James Blagg, prior to and/or after he was lodged in the City of Medford jail facility.

"* * * * *

"C.   The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint, upon the terms and conditions set forth below.

"* * * * *

"1.1   In consideration of the payments set forth in Section 2, Plaintiffs hereby completely release and forever discharge Defendants and Insurer from any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, liens, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiffs now have, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings) including, without limitation, any and all known or unknown claims for bodily and personal injuries to Plaintiffs, or any future wrongful death claim of Plaintiffs' representatives or heirs, which have resulted or may result from the alleged acts or omissions of the Defendants.

"* * * * *

> "All sums set forth herein constitute damages on account of personal injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended."

The settlement agreement and release provided that Blagg was to receive monthly payments of $360 for life, with a 3% annual escalator, and a lump sum of $40,000 for attorney fees.

In April 1993, AFSD initiated this action, seeking to foreclose its Medicaid reimbursement lien. The complaint alleged that notice of that lien was properly given and that, notwithstanding that notice, Northland settled Blagg's claims and made payments pursuant to that settlement without paying the lien. AFSD and Northland filed cross-motions for summary judgment. In support of its motion, AFSD submitted the amended complaint from the third-party litigation and the settlement and release in that litigation. AFSD asserted that those documents by themselves established a *"prima facie"* entitlement to foreclosure pursuant to ORS 416.540. That statute provides in part:

> "(1)  * * *  The Adult and Family Services Division shall have a lien upon the amount of any judgment in favor of a recipient or amount payable to the recipient under a settlement or compromise for all assistance received by such recipient from the date of the injury of the recipient to the date of satisfaction of such judgment or payment under such settlement or compromise."

In opposing AFSD's motion and in cross-moving for summary judgment, Northland proffered the affidavit of Campagna, Blagg's neurosurgeon. That affidavit stated, in part:

> "In layman's terms, Mr. Blagg had a head injury which caused internal bleeding in his head. As the bleeding progresses, pressure builds on the brain. This pressure, combined with the loss of blood and other physiological factors renders the patient unconscious. However, this does not necessarily result in any permanent impairment. The treatment procedure provided essentially involved placing holes in the skull to relieve the pressure and remove the blood. Whether this procedure is done immediately after

the head trauma occurs, or hours later may make no differ-
ence in the patient's prognosis. Based upon my observa-
tions of Mr. Blagg when I performed this surgery, and the
follow up care, I saw no evidence that bringing him to the
hospital sooner would have altered his surgical treatment,
its outcome, the length of his hospitalization, or his
prognosis."

Northland asserted that Campagna's averments estab-
lished, as a matter of uncontroverted fact, that there was no
causal nexus between (1) the conduct that underlay the
third-party suit and settlement and (2) Blagg's Medicaid-
funded treatment. Thus, Northland reasoned, there was not
a legally sufficient relationship between the settlement and
the treatment to permit recoupment of Medicaid expendi-
tures pursuant to ORS 416.540's lien enforcement mecha-
nism. In the alternative, Northland argued that, in all
events, Campagna's affidavit raised a material issue of fact
as to whether the subject matter of the settlement was
sufficiently related to the Medicaid-funded treatment to
warrant recoupment. The trial court rejected Northland's
argument, denied its cross-motion, and entered summary
judgment for AFSD.[3]

On appeal, the parties expend considerable energy
in preliminary sparring over the proper construction and
application of ORS 416.540. AFSD urges a broad reading of
the statute that would enable it to recoup Medicaid expen-
ditures from *any* personal injury settlement involving a
Medicaid recipient, regardless of whether that settlement
involved the same injuries that were the subject of Medi-
caid-reimbursed care. AFSD argues, for example, that, if
Blagg had been injured in a car accident months before the
convenience store brawl and had settled his auto personal
injury claim after the brawl and his receipt of Medicaid-
funded treatment, AFSD would be entitled to execute
against *those* settlement proceeds. As support for such an
embracing construction of ORS 416.540, AFSD points to the
definition of "claims" and "settlement" in ORS 416.510:

"As used in ORS 416.510 to ORS 416.610, unless the
context requires otherwise:

---

[3] Northland does not assign error to the trial court's denial of its cross-
motion for summary judgment.

"(4)  'Claim' means a claim of a recipient of assistance for damages for personal injuries against any person or public body, agency or commission other than the State Accident Insurance Fund Corporation or Workers' Compensation Board.

"(8)  'Settlement' means a settlement between a recipient and any person or public body, agency or commission against whom the recipient has a claim."

Thus, AFSD reasons, even if Blagg's third-party personal injury suit against the city and its officers somehow did not relate to his Medicaid-funded treatment, its lien against that settlement would nevertheless be valid.

Northland counters that AFSD's construction of the statute is erroneous and that, in all events, AFSD is bound by a federal court judgment that limited its foreclosure of liens under ORS 416.540. In *Timmons v. Concannon*, No. 92-638-RE, United States District Court, District of Oregon (Aug. 20, 1992), a class action, the court entered the following judgment:

"[The State of Oregon's] use of ORS 416.510 *et seq.* (lien statute) to recover expenditures under the Medicaid Act, 42 USC § 1396a *et seq.* from plaintiffs' personal injury recoveries for expenditures unrelated to the legal liability of the third-party to plaintiffs violates 42 USC § 1396p-(a)(1)(A)[4] and defendants are enjoined from recovering such sums."

The record in this case does not disclose the precise nature of the dispute in *Timmons*. However, we perceive from the face of the judgment that the federal court concluded that, in some circumstances, lien foreclosures under ORS 416.540 conflicted with, and were preempted by, federal law concerning Medicaid recoupment. As we understand the federal court's judgment, it enjoins AFSD from foreclosing against third-party settlements, except to the extent that Medicaid-funded treatment is related to the settling party's

---

4 42 USC § 1396p(a)(1), provides, in part:

"No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except —

"(A)  pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual[.]"

legal liability. Thus, the *Timmons* injunction seems to endorse, and enforce, Northland's narrower, "related to" reading.

■ If AFSD had not been a party in *Timmons*, the federal court's order, although instructive, would have no other effect in this matter. *See, e.g., Mears v. Marshall*, 138 Or App 476, 478, 909 P2d 212 (1996). But AFSD's administrator was a defendant in *Timmons* in his official capacity. Consequently, whatever the merits of AFSD's broader reading of ORS 416.540, it is bound by the federal court's injunction. Whether viewed in terms of state/federal comity,[5] or otherwise, we regard the federal court's construction of ORS 416.540 as controlling for purposes of this case.

So framed, our inquiry reduces to two related questions. First, did AFSD, in moving for summary judgment, make a *prima facie* showing that the third-party litigation and settlement were related to the injuries that were the subject of Blagg's Medicaid-funded treatment? Second, if AFSD did make such a showing, did Northland's proffer of Campagna's affidavit controvert that showing, precluding summary judgment?

■ We conclude that AFSD made a *prima facie* showing sufficient to support summary judgment. As noted, AFSD relied principally on the first amended complaint in the third-party litigation and the settlement agreement in that case. Paragraphs 7 and 8 of the first amended complaint, *see* 139 Or App at 95 — and particularly their references to "permanent damage * * * due to brain damage," "permanent impairment of earning capacity," and "medical and rehabilitative expenses to date" — clearly allege that the city and its officers were responsible for injuries that were the subject of Medicaid-funded treatment. The settlement agreement asserts, without differentiation, that it pertains to *"any and all"* claims asserted in the complaint. Thus, AFSD's proof was sufficient to demonstrate the "related to" nexus required under the *Timmons* injunction.

---

[5] At oral argument, AFSD's counsel acknowledged that, "as a matter of comity," AFSD was bound by the *Timmons* injunction.

■ We further conclude that Campagna's averments did not create a disputed issue of fact that precluded summary judgment.[6] The parties' positions in that regard are two ships passing in the night. Northland contends that Campagna's averments demonstrate that, as a matter of medical fact, the officers' conduct could not have caused or exacerbated Blagg's physical injuries, and, thus, the Medicaid-funded treatment was not related to the third-party litigation and settlement.

AFSD responds that the pleadings and the settlement documents are not only *prima facie* proof, but incontrovertible proof, that the third-party action and settlement *related to* liability for injuries that were the subject of Medicaid-funded treatment. In AFSD's view, the question of actual medical causation is immaterial to the nexus *Timmons* requires and, thus, Northland's medical evidence did not controvert AFSD's proof.

■ We agree with AFSD for several reasons. First, as a matter of law, the third-party settlement related to liability for Blagg's Medicaid-treated injuries. The complaint in the third-party litigation unambiguously alleged that the officers had caused or exacerbated Blagg's severe medical injuries, causing Blagg to incur substantial medical expenses, and the settlement of that litigation expressly pertained to those claims. Thus, regardless of actual medical causation, the *settlement*, by its own terms, *related to* liability for Blagg's injuries. Campagna's affidavit did not controvert that dispositive fact.

Our conclusion in that regard is buttressed by several practical considerations. If Northland were correct, parties in Blagg's position could convert every Medicaid lien foreclosure case into a collateral hearing on the actual causation of the Medicaid recipient's injuries. For example, Medicaid recipients could (as Blagg did here) allege that third parties caused their injuries, receive settlements on such claims, and then, in the subsequent lien foreclosure proceeding, avoid recoupment by denying that the third parties caused their injuries. We are loath to read ORS

---

[6] We note that the 1995 legislature amended ORCP 47 C. Assuming, without deciding, that that amendment applies to this appeal, it does not affect our analysis.

416.540 as sanctioning such a "now you see it, now you don't" stratagem. And we are confident that the court in *Timmons*, in requiring the "related to" nexus, did not intend that result.[7]

We thus conclude that AFSD's proof showed the requisite relationship between the third-party settlement and the Medicaid-funded treatment. We further conclude that, as a matter of law, Northland's evidence pertaining to actual medical causation did not controvert that showing.[8] The trial court properly allowed AFSD's motion for summary judgment.

■ Finally, the Blaggs argue that the court erred in denying their motion to intervene. Although the Blaggs now argue that they were entitled to intervene permissively, they did not seek permissive intervention before the trial court. Rather, they argued only that they were entitled to intervene as "a matter of right." Intervention as of right is available only "when a statute of this state, [the ORCP], or the common law, confers an unconditional right to intervene." ORCP 33 B. The Blaggs cite no statute, rule, or common law principle conferring such a right in their circumstance. Accordingly, the motion to intervene was correctly denied.

Affirmed.

---

[7] We note, moreover, that if the Blaggs and Northland believed that their settlement did not relate to conduct causing or exacerbating the Medicaid-treated injuries, they could have attempted to compromise AFSD's lien. Such negotiations are routine, particularly with respect to workers' compensation liens, in third-party personal injury litigation. But they did not do so.

[8] In so holding, we need not, and do not, decide whether evidence other than that pertaining to actual medical causation could controvert the sort of *prima facie* showing of "relatedness" that AFSD made here.