(No. 86105.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTHONY NANCE, Appellee.

*Opinion filed January 21, 2000.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, James Fitzgerald and Robert Robertson, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Thomas More Donnelly, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Anthony Nance was arrested by Chicago police and charged by complaint with violating section 25—1(a)(2) of the Criminal Code of 1961, a subsection of the mob action statute prohibiting "[t]he assembly of 2 or more persons to do an unlawful act." 720 ILCS 5/25—1(a)(2) (West 1996). Following a hearing, the circuit court of Cook County dismissed the complaint with prejudice, holding that the statute violates the first and fourteenth amendments to the United States Constitution (U.S. Const., amends. I, XIV). The State appealed the dismissal. 145 Ill. 2d R. 604(a)(1). Because a statute of this state was held invalid, the appeal was brought directly to our court. 134 Ill. 2d R. 603. We affirm.

The validity of section 25—1(a)(2) of the Criminal Code of 1961 (720 ILCS 5/25—1(a)(2) (West 1996)) was before this court in *People v. Nash*, 173 Ill. 2d 423 (1996). As we noted in *Nash*, the statute is the same one declared

unconstitutional in 1968 by a three-judge federal district court in *Landry v. Daley*, 280 F. Supp. 938, 955 (N.D. Ill. 1968). The federal court found the law facially invalid under the first amendment to the United States Constitution (U.S. Const., amend. I) because it is impermissibly vague and overbroad. *Landry*, 280 F. Supp. at 955. Based on this determination, the federal court "perpetually enjoined and restrained" the State and the City of Chicago from enforcing or bringing prosecutions under the law. *Nash*, 173 Ill. 2d at 426.

In *Nash*, the same circuit judge who invalidated the statute in this case declared the law unconstitutional. When the State and the City appealed, the *Nash* defendants moved to dismiss, arguing that the appeal was barred by the permanent injunction entered by the *Landry* court. We did not address that contention, however, because we found another, more fundamental obstacle to the State's prosecution: the charging instruments were fatally defective. In light of that disposition, we had no occasion to make our own, independent assessment of the law's constitutionality. *Nash*, 173 Ill. 2d at 432.

The case before us today parallels *Nash* in several key respects. Most significantly, it has revived the issue as to the effect of the permanent injunction entered by the federal court in *Landry*. Because the *Landry* injunction has become a recurrent source of controversy and because it appears that the State and the City of Chicago intend on continuing to enforce section 25—1(a)(2) despite the injunction, we believe that sound considerations of judicial administration require us to settle the question of the injunction's validity.

In this case, the State contends that the *Landry* decision is void because it was overturned on appeal. The State is incorrect. As we pointed out in *Nash*, 173 Ill. 2d at 426, the United States Supreme Court did reverse the

district court's rulings with respect to a separate statutory provision; however, that portion of the district court's judgment invalidating section 25—1(a)(2) and prohibiting its enforcement was never appealed and was not before the court. The United States Supreme Court said so plainly and unambiguously in its opinion. *Boyle v. Landry*, 401 U.S. 77, 80, 27 L. Ed. 2d 696, 699, 91 S. Ct. 758, 759-60 (1971). The injunction against enforcement of section 25—1(a)(2) therefore remained in effect. The district court's order following remand from the United States Supreme Court made this clear. *Nash*, 173 Ill. 2d at 426.

The State argues, in the alternative, that it should not be bound by the *Landry* injunction because that decision is based on a view of the law which is no longer sound. The problem with the State's argument is that it overlooks basic principles governing injunctions. It is true that an injunction can be modified or dissolved when the court finds that the law has changed or that equity no longer justifies a continuance of the injunction. An injunction remains in full force and effect, however, until it has been vacated or modified by the court which granted it or until the order or decree awarding it has been set aside on appeal. Unless it has been overturned or modified by orderly processes of review, an injunction must be obeyed, even if it is erroneous. *People ex rel. Illinois State Dental Society v. Norris*, 79 Ill. App. 3d 890, 895-96 (1979).

The implications of these principles are clear. If the State and the City of Chicago believed that the *Landry* injunction was no longer proper or fair, it was incumbent on them to have it modified or dissolved. As we noted in *Nash*, 173 Ill. 2d at 426, they have never sought such relief, and the legislature has not amended the statute to cure the constitutional defects cited by the *Landry* court. The *Landry* court's order perpetually enjoining and

restraining them from enforcing section 25—1(a)(2) therefore remains in effect. The State and the City of Chicago have no valid basis for refusing to honor it.

The State and the City cannot justify their continued enforcement of section 25—1(a)(2) on the grounds that the relief afforded by the *Landry* injunction was limited to the particular individuals who initiated that litigation. The litigation in *Landry* was brought on behalf of "all negroes in the City of Chicago." *Landry*, 280 F. Supp. at 944. The defendant in this case is an African-American who resides and was arrested in the City of Chicago. Moreover, the *Landry* decision was not confined to the law as applied to the particular conduct of the plaintiffs in that case. The court found the law invalid on its face because it was "impermissively vague and overbroad" in violation of the first amendment. *Landry*, 280 F. Supp. at 955. A statute which is facially invalid has no force and effect upon any person or entity regardless of the specific circumstances. *In re Marriage of Lappe*, 176 Ill. 2d 414, 439 (1997) (Freeman, J., dissenting, joined by McMorrow, J.). If the State's theory were correct and the *Landry* decision could only be invoked by the individual plaintiffs from that case, it would defeat the purpose behind overbreadth challenges, which is to protect the first amendment rights of other parties in situations not before the court. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 520 (1996).

Finally, the State and the City cannot evade the *Landry* injunction by arguing that the state courts of Illinois are not bound by decisions of lower federal courts. As a general rule, the interpretation given to Illinois statutes by the lower federal courts is not conclusive on the courts of this state. *Hanrahan v. Williams*, 174 Ill. 2d 268, 277 (1996). That rule, however, is addressed to the situation where the federal court's decision is being invoked as precedent on a point of law. In the case before

us, the *Landry* decision is not being cited for its legal analysis. Whether the federal court's analysis is correct is irrelevant. Whatever one thinks of the federal district court's reasoning, its decision is binding because it constitutes a valid judgment by a duly-constituted tribunal on the same question presented here and prohibits the same prosecuting officials involved in this case from enforcing the same statute against the same class of defendants to which the defendant in this case belongs.

Under the doctrine of collateral estoppel a party is precluded from relitigating an issue decided in a prior proceeding. The doctrine is applicable where, as here, the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Talarico v. Dunlap*, 177 Ill. 2d 185, 191 (1997).

No possible claim can be made that application of the doctrine would be unfair in this case. In *Landry*, the State had the opportunity and incentive to litigate the matter fully (see *Talarico*, 177 Ill. 2d at 192) and did so. Having litigated and lost, it is not entitled to a "second bite of the apple." There would be no question of this had the original proceeding taken place in the courts of Illinois. The result should not be different merely because the *Landry* judgment was entered by a court of the United States. Although states are free to allocate decisionmaking authority among their own tribunals as they please, they are not free to prefer their processes to those of the federal courts and to decline to respect federal judgments. *In re Cook*, 49 F.3d 263, 266 (7th Cir. 1995).

The same conclusion is mandated by principles of state and federal comity. Where a federal court has declared a state statute invalid and enjoined the state from enforcing it, courts of review in other jurisdictions

have recognized that they are bound by the federal court's injunction (see *State ex rel. Department of Human Resources, Adult & Family Services Division v. Northland Insurance Co.*, 139 Or. App. 92, 100, 911 P.2d 942, 947 (1996)) and that "until such time as the federal court's decision is reversed by the appropriate appellate court, the permanent injunction issued by the federal district court will be binding on the State *** and its instrumentalities." *Unborn Child Amendment Committee v. Ward*, 318 Ark. 165, 167-68, 883 S.W.2d 817, 818 (1994).

In sum, the attempt by the State to relitigate the viability of section 25—1(a)(2) of the Criminal Code of 1961 constitutes an impermissible collateral attack on the federal court's judgment. If the State seeks relief from that judgment, its recourse is with the federal courts, not the courts of this state. Until the federal courts modify or dissolve the injunction, the courts of Illinois cannot permit the State to prosecute defendants in violation of the injunction's commands. Our judiciary will not be the agent for contumacious conduct.

For the foregoing reasons, the circuit court of Cook County was correct in once again dismissing a complaint filed by the State under section 25—1(a)(2) of the Criminal Code of 1961. The circuit court's judgment is therefore affirmed.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

Anthony Nance was charged in Cook County circuit court with violating section (a)(2) of the mob action statute, which prohibits "the assembly of 2 or more persons to do an unlawful act." 720 ILCS 5/25—1(a)(2) (West 1996). The trial court declared the mob action statute unconstitutional and dismissed the charges against defendant. The State appealed directly to this court, and the majority affirms, holding that in the interests of state

and federal comity, this court should defer to a 30-year-old injunction issued by a federal district court which permanently enjoined enforcement of section (a)(2) of the mob action statute in Cook County. *Landry v. Daley*, 280 F. Supp. 938 (N.D. Ill. 1968) (holding mob action statute vague and overbroad). The district court's injunction, however, should not be enforced by this court because it is an illegitimate federal intrusion into state criminal prosecutions and is based on an inaccurate construction of the mob action statute. Therefore, I respectfully dissent.

The majority holds that this court should enforce the district court's injunction based on state and federal comity. 189 Ill. 2d at 147-48. Comity, this court has noted, is not a constitutional command. *Schoeberlein v. Purdue University*, 129 Ill. 2d 372, 377 (1989). Comity, therefore, gives effect to the judicial decisions of another jurisdiction " 'not as a matter of obligation, but out of deference and respect.' " *Rollins v. Ellwood*, 141 Ill. 2d 244, 256 (1990), quoting *Schoeberlein*, 129 Ill. 2d at 378; see also 16 Am. Jur. 2d *Conflict of Laws* § 17 (1998) (describing comity as a rule of practice, convenience and expediency, not a rule of law). This court will not enforce law from another jurisdiction on the basis of comity if it is clearly contrary to Illinois public policy or the "general interest of the citizens of this State." *Schoeberlein*, 129 Ill. 2d at 379.

Any discussion of whether the district court's decision in *Landry* is worthy of deference is sorely missing from the majority opinion. An examination of both federal and Illinois law reveals that the *Landry* court's injunction should not be enforced by this or any other Illinois state court.

*Landry* was a class action filed in federal district court in which the plaintiffs challenged the constitutionality of several provisions of the Illinois Criminal Code,

including the mob action and intimidation statutes. Some of the plaintiffs in *Landry* faced criminal prosecutions in the circuit court of Cook County. The remainder of the plaintiffs, purporting to represent "the class of all negroes in the City of Chicago," faced no criminal charges. The district court granted plaintiffs' request for declaratory relief, holding that section (a)(2) of the mob action statute was unconstitutionally vague and overbroad. *Landry*, 280 F. Supp. at 955. The court also held that section (a)(3) of the intimidation statute was overbroad. *Landry*, 280 F. Supp. at 964. The district court permanently enjoined enforcement of both statutes.

The defendants appealed, but they appealed only the portion of the district court's decision regarding the intimidation statute. Defendants did not appeal the district court's holding that section (a)(2) of the mob action statute was unconstitutional. The United States Supreme Court reversed, holding the plaintiffs failed to make a showing of irreparable injury necessary to justify federal interference in state criminal prosecutions. *Boyle v. Landry*, 401 U.S. 77, 80-81, 27 L. Ed. 2d 696, 699, 91 S. Ct. 758, 760 (1971). Noting that not a single plaintiff had been prosecuted or threatened with prosecution under the intimidation statute, the Court stated:

> "[I]t appears from the allegations [in the complaint] that those who originally brought this suit made a search of state statutes and city ordinances with a view to picking out certain ones that they thought might possibly be used by the authorities as devices for bad-faith prosecutions against them. There is nothing contained in the allegations of the complaint from which one could infer that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute under the intimidation statute in the normal manner. *** [T]he normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future. The policy of a century and a

half against interference by the federal courts with state law enforcement is not to be set aside on such flimsy allegations as those relied upon here." *Landry*, 401 U.S. at 81, 27 L. Ed. 2d at 699-700, 91 S. Ct. at 760.

In a case decided the same day as *Landry*, the Court reemphasized that, except in "extraordinary circumstances," even a defendant actually facing criminal prosecution in state court cannot not seek federal injunctive relief because the defendant can challenge the constitutionality of the statute at his trial in state court. *Younger v. Harris*, 401 U.S. 37, 44-45, 27 L. Ed. 2d 669, 675-76, 91 S. Ct. 746, 750-51 (1971). Granting injunctive relief under such circumstances, the Court concluded, would constitute an illegitimate interference with state criminal prosecutions. *Younger*, 401 U.S. at 43-45, 27 L. Ed. 2d at 675-76, 91 S. Ct. at 750-51. In *Younger*, the Court held that this rule applies even in cases where the defendant alleges in federal court that the state criminal statute on its face violates the first amendment. *Younger*, 401 U.S. at 53, 27 L. Ed. 2d at 680-81, 91 S. Ct. at 755.

Although the Court noted in *Landry* that its holding was limited to the intimidation statute (*Landry*, 401 U.S. at 80, 27 L. Ed. 2d at 699, 91 S. Ct. at 760), an examination of the Court's analysis in *Landry* and *Younger* raises serious questions about the continued viability of the rationale underlying the district court's injunction enjoining the state from enforcing the mob action statute. Indeed, if the plaintiffs in *Landry* filed their constitutional challenge to the mob action statute in federal court today, it is highly likely that it would be summarily dismissed. This court should not enforce the injunction in *Landry* because it is highly questionable whether even the federal courts would enforce it.

The injunction in *Landry* is even more problematic because the district court's holding that the mob action statute is unconstitutionally vague and overbroad is based on an inaccurate construction of the mob action

statute. The district court in *Landry* held that the phrase "unlawful act" in the mob action statute is "not limited to criminal illegality; it includes city regulatory ordinances, quasi-criminal ordinances, torts, or other civil wrongs." *Landry*, 280 F. Supp. at 955. This court, however, has limited the scope of such phrases solely to violations of the Criminal Code. *People v. Williams*, 133 Ill. 2d 449, 454 (1990) (holding that the phrase "other than a lawful purpose" in child abduction statute applies only to violations of the criminal code and not to violations of administrative regulations or city ordinances).

The majority's analysis in this case is even more problematic because, despite its protestations to the contrary, the majority does indeed defer to the district court's constitutional analysis in *Landry*. The majority states:

"Moreover, the *Landry* decision was not confined to the law as applied to the particular conduct of the plaintiffs in that case. The court found the law invalid on its face because it was 'impermissibly vague and overbroad' in violation of the first amendment. *Landry*, 280 F. Supp. at 955. A statute which is facially invalid has no force and effect upon any person or entity regardless of the specific circumstances. *In re Marriage of Lappe*, 176 Ill. 2d 414, 439 (1997) (Freeman, J., dissenting, joined by McMorrow, J.). If the State's theory were correct and the *Landry* decision could only be invoked by the individual plaintiffs from that case, it would defeat the purpose behind overbreadth challenges, which is to protect the first amendment rights of other parties in situations not before the court. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 520 (1996)." 189 Ill. 2d at 146.

The import of this language is that the mob action statute, since it has been declared facially unconstitutional by the federal district court, cannot be applied to anyone in this state. It bears repeating, however, that a federal district court exercises no appellate jurisdiction over any Illinois court, and the district court's ruling on the constitutionality of the mob action statute is not binding

on this court. See *People v. Kokoraleis*, 132 Ill. 2d 235, 292-93 (1989) (refusing to follow federal district court's holding that Illinois death penalty statute is unconstitutional). The majority essentially transforms the defendants' failure to appeal the portion of the *Landry* court's injunction which covered the mob action statute into binding federal constitutional law. In its zeal to show the proper "deference and respect" to the district court's decision in *Landry*, the majority has precluded this court from performing one of its primary functions, namely, to interpret the constitution.

The majority's decision to defer to the federal district court's analysis that the mob action statute is unconstitutional is even more unfortunate because the mob action statute does not violate any provisions of either the federal or Illinois Constitution. As mentioned above, the district court's constitutional analysis is premised on an inaccurate construction of the mob action statute. Limiting the phrase "unlawful act" in the mob action statute to violations of the Criminal Code resolves the vagueness problem identified by the district court. The mob action statute sufficiently informs persons as to the forbidden conduct (assembling with the intent to violate the Illinois Criminal Code) and, therefore, is not vague. See *City of Chicago v. Morales*, 177 Ill. 2d 440, 453 (1997), *aff'd*, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999) (stating antiloitering laws not unconstitutionally vague when joined with a second specific intent element such as intent to solicit an unlawful act).

Nor is the mob action statute overbroad. The mob action statute does not have a sufficiently substantial impact on conduct protected by the first amendment to render it unconstitutional. See *Morales*, 527 U.S. at 52-53, 144 L. Ed. 2d at 78, 119 S. Ct. at 1857 (holding gang loitering ordinance which prohibited gang members from loitering with one another not overbroad). The mob ac-

tion statute does not criminalize speech or any form of conduct that is intended to convey a message. The circuit court in this case concluded that the mob action statute criminalizes "the act of assembling to contemplate or consider 'unlawful' conduct." The mob action statute, however, does no such thing. By its very terms the mob action statute criminalizes only assembly to *do* an unlawful act. The statute does not criminalize advocacy of ideas.

Defendant's argument that the mob action statute violates the Illinois Constitution also fails. Article I, section 5, of the Illinois Constitution provides, "The people have the right *to assemble in a peaceable manner*, to consult for the common good, to make known their opinions to their representatives and to apply for redress of grievances." (Emphasis added.) Ill. Const. 1970, art. I, § 5. An assembly is certainly not peaceable if those assembled have done so with the purpose of committing a crime. The conduct prohibited by the mob action statute, therefore, is not protected by the Illinois Constitution.

I would reverse the circuit court's order declaring the mob action statute unconstitutional and dismissing the complaint against defendant. I respectfully dissent.

JUSTICE MILLER joins in this dissent.