# Illinois Official Reports

## Supreme Court

> ### *In re Appointment of Special Prosecutor*, 2019 IL 122949

| | |
|---|---|
| Caption in Supreme Court: | *In re* APPOINTMENT OF SPECIAL PROSECUTOR (Better Government Association, Appellant; the Office of the Special Prosecutor *et al.*, Appellees). |
| Docket No. | 122949 |
| Filed | January 25, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michael P. Toomin and the Hon. Mary L. Mikva, Judges, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgments affirmed in part and reversed in part. |
| Counsel on Appeal | Matthew Topic and Joshua Burday, of Loevy & Loevy, of Chicago, for appellant.<br><br>Daniel Rubinstein, Sean G. Wieber, Patrick R. O'Meara, and Michael A. Meneghini, of Winston & Strawn LLP, of Chicago, for appellee Office of the Special Prosecutor.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, Irina Dmitrieva, and Jane Elinor Notz, Assistant Corporation Counsel, of counsel), for other appellees. |

Brendan J. Healey, of Mandell Menkes LLC, of Chicago, and Katie Townsend, Adam A. Marshall, and Michael W. Shapiro, of Washington, D.C., for *amicus curiae* Reporters Committee for Freedom of the Press.

Justices

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Thomas took no part in the decision.

## OPINION

¶ 1 Defendants, the City of Chicago (City) and the office of the special prosecutor (OSP), denied the requests of plaintiff, the Better Government Association (BGA), to disclose, pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2012)), sealed grand jury documents.[1] In the course of the resulting litigation, the circuit court of Cook County entered competing orders regarding disclosure. The appellate court rejected disclosure of most of the BGA's FOIA requests but remanded to the circuit court for an *in camera* inspection of a specific category of documents to determine which, if any, may be disclosed. 2017 IL App (1st) 161376.

¶ 2 This court allowed the BGA's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Mar. 15, 2016)). We now affirm the judgment of the appellate court.

¶ 3 I. BACKGROUND

¶ 4 During the early morning of April 24, 2004, an altercation arose between Richard Vanecko and David Koschman on Division Street in Chicago. What began as an exchange of words escalated to Vanecko punching Koschman in the face, causing Koschman to fall backwards and strike his head on the sidewalk. On May 6, 2004, Koschman died from his injuries resulting from Vanecko's physical assault. Between 2004 and 2011, law enforcement authorities investigated the incident. However, no charges were filed against Vanecko or anyone else.

¶ 5 In December 2011, several members of the Koschman family filed a petition for the appointment of a special prosecutor in the criminal division of the circuit court of Cook County (hereinafter the criminal court).[2] The petition alleged that Vanecko was a nephew of then-

---

[1]This appeal arises from two separate actions in the circuit court, later consolidated before the appellate court. The parties described here as plaintiff and defendants had those roles in Better Government Ass'n v. Office of the Special Prosecutor, No. 15-CH-4183 (Cir. Ct. Cook County), and different roles in *In re* Appointment of Special Prosecutor, No. 11-Misc.-46 (Cir. Ct. Cook County).

[2]The circuit court of Cook County is a unified court of general jurisdiction that is divided into divisions as a matter of administrative convenience. See *Droen v. Wechsler*, 271 Ill. App. 3d 332, 336-

- 2 -

Chicago Mayor Richard M. Daley and a grandson of former Chicago Mayor Richard J. Daley and that "officials in the Chicago Police Department and the State's Attorney's Office may have been led by favoritism or other improper motives to obstruct the investigation so that [Vanecko] did not face criminal charges." In April 2012, the criminal court granted the petition and appointed Dan K. Webb as special prosecutor. See 55 ILCS 5/3-9008 (West 2010). The court ordered Webb to investigate (1) whether criminal charges should be filed against anyone in connection with Koschman's death and (2) whether "employees of the Chicago Police Department and the Cook County State's Attorney's Office acted intentionally to suppress and conceal evidence, furnish false evidence, and generally impede the investigation into Mr. Koschman's death." The court also ordered Webb to submit a final report "detailing the progress and ultimate results of the investigation and any criminal prosecutions commenced."

¶ 6 The court further ordered that "the Special Prosecutor shall be empowered to hire and direct a staff of deputy attorneys, investigators, and such other administrative personnel as necessary to discharge the duties of the Office of the Special Prosecutor." The order memorialized the understanding "that in performance of his duties the Special Prosecutor shall utilize office space provided by his law firm *** with reimbursement for incidental costs for telephone or internet connections, or other office equipment and miscellaneous expenses incurred."

¶ 7 In May 2012, on petition of the special prosecutor, the criminal court impaneled a special grand jury, and on June 14, 2012, the court granted the special prosecutor's motion for a protective order. The order placed under seal "all Grand Jury materials, including but not limited to subpoenas, target letters, and other correspondence related to the service of a Grand Jury subpoena, sent by the [OSP] to any individual or entity in connection with this investigation." Also, the protective order prohibited "individuals or entities who receive Grand Jury materials from the [OSP] in connection with this investigation *** from further disseminating that material or information contained therein." Further, the criminal court placed under seal both the OSP's motion and the protective order itself.

¶ 8 During the course of the OSP investigation, the special grand jury obtained information from 146 witnesses through testimony and witness interviews. The special grand jury issued 160 subpoenas for documentary evidence and testimony and collected more than 22,000 documents totaling more than 300,000 pages. On December 3, 2012, the special grand jury indicted Vanecko for involuntary manslaughter in connection with Koschman's death.

¶ 9 On September 18, 2013, after the OSP informed the criminal court that no further indictments would be sought against employees of the Chicago Police Department or the Cook County State's Attorney's Office for their actions related to Koschman's death, the court discharged the special grand jury. That same day, the OSP filed its report, which the court placed under seal to preserve Vanecko's right to a fair trial. On January 31, 2014, Vanecko pled guilty as charged. On February 4, 2014, the court unsealed the report and released it to the public.

¶ 10 A few days later, the Chicago Sun-Times submitted a FOIA request to the City seeking copies of all subpoenas received from the OSP and all documents and records provided to the

_____

37 (1995); *Colaric v. Norstrom*, 146 Ill. App. 3d 352, 355 (1986); *In re Marriage of Peshek*, 89 Ill. App. 3d 959, 966-67 (1980). However, for our convenience, we will refer to the circuit court divisions relevant to the instant case as the "criminal court" and the "chancery court."

OSP. The City denied the request based on the June 2012 protective order and requested the criminal court to unseal the June 14, 2012, protective order, which the court did on March 27, 2014. On the City's motion, the court entered a June 2014 order clarifying its June 2012 protective order. The 2014 protective order prohibited the City from complying with any FOIA request that identified or characterized documents as having been disseminated to the OSP in furtherance of the Koschman investigation. Further, the 2014 order provided that the June 2012 protective order remained in effect and that it limited only the identification of any documents or other records as being grand jury materials.

¶ 11        In January 2015, the BGA submitted the instant FOIA requests to defendants. The BGA sought from the OSP (1) documents sufficient to show the names of everyone whom the OSP interviewed; (2) copies of statements by and communications with Daley family members, their attorney, and the City's corporation counsel at the time; and (3) copies of itemized invoices and billing records. The BGA sought from the City essentially the same documents that the Chicago Sun-Times had previously requested, copies of all subpoenas received from the OSP and all records and documents provided to the OSP. Each defendant sent a response letter denying the BGA's FOIA request, explaining that all of the materials requested were exempt from FOIA because disclosure was prohibited by state law.

¶ 12        In March 2015, the BGA filed a complaint for declaratory and injunctive relief against the OSP, the mayor's office and the law department of the City of Chicago, and the Chicago Police Department. The BGA's lawsuit was assigned to chancery court, which declined to transfer the action to criminal court in conjunction with the protective orders.

¶ 13        The OSP and the City each filed a motion to dismiss the BGA's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)). Each defendant asserted that the requested materials were exempt from disclosure pursuant to section 7(1)(a) of FOIA (5 ILCS 140/7(1)(a) (West 2014)) because disclosure was prohibited by state law concerning the secrecy of grand jury proceedings.

¶ 14        The OSP asserted that section 112-6 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/112-6 (West 2014)) prohibited disclosure. The chancery court granted the OSP's motion to dismiss. The court found that section 112-6 prohibited disclosure of the requested materials, which rendered them exempt from disclosure pursuant to section 7(1)(a) of FOIA.

¶ 15        The City asserted that the criminal court's protective orders prohibited disclosure, which rendered the requested materials exempt from disclosure pursuant to section 7(1)(a) of FOIA. The City also asserted that it would be held in contempt of court if it disregarded the protective orders. However, the chancery court denied the City's motion to dismiss. The chancery court rejected the City's argument that a court order alone creates a FOIA exemption. Accordingly, the chancery court found that the criminal court's protective orders did not constitute state law that would render the requested materials exempt from disclosure pursuant to section 7(1)(a) of FOIA.

¶ 16        At the suggestion of the chancery court, the City returned to criminal court and requested modification of the protective orders in light of the chancery court's ruling. The criminal court declined to modify the protective orders.

¶ 17        The City filed an answer and affirmative defenses to the BGA's complaint. The City and the BGA then filed cross-motions for judgment on the pleadings, adopting their respective arguments made in the context of the City's motion to dismiss. The chancery court granted

judgment on the pleadings in favor of the BGA and denied the City's motion therefor. Noting the conflict with the criminal court's orders, the chancery court stayed the City's disclosure obligations pending appeal.

¶ 18    The litigation generated multiple appeals, which the appellate court consolidated. 2017 IL App (1st) 161376, ¶ 29.[3] The BGA appealed from the chancery court's dismissal of its FOIA request to the OSP. The appellate court affirmed the dismissal in large part (*id.* ¶¶ 54-65) but concluded that the OSP's invoices and billing records that the BGA requested were not categorically protected from disclosure. The appellate court reversed and remanded so that the chancery court could conduct an *in camera* inspection to determine what, if any, billing records may be disclosed.[4] *Id.* ¶¶ 66-70.

¶ 19    Also, the City appealed from the chancery court's grant of judgment on the pleadings in favor of the BGA. The appellate court reversed the judgment in favor of the BGA and entered judgment on the pleadings in favor of the City. *Id.* ¶¶ 40-53; see Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). The appellate court expressly refused to address the issue of whether the criminal court's protective orders constituted state law that would render the requested materials exempt from disclosure pursuant to section 7(1)(a) of FOIA. Rather, the appellate court held that the protective orders took precedence over the disclosure requirements of FOIA. 2017 IL App (1st) 161376, ¶ 46.

¶ 20    The BGA appeals to this court. We granted the Reporters Committee for Freedom of the Press leave to submit an *amicus curiae* brief in support of the BGA. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 21                                    II. ANALYSIS

¶ 22    Before this court, the BGA assigns error to the appellate court's (1) partial dismissal of the FOIA complaint against the OSP and (2) grant of judgment on the pleadings in favor of the City. In both procedural settings, our review is *de novo*. See, *e.g.*, *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 21 (section 2-619 dismissal); *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005) (judgment on the pleadings). Whether FOIA mandates disclosure from each defendant requires us to construe various statutory provisions. Statutory construction presents a question of law reviewed *de novo*. *In re M.M.*, 2016 IL 119932, ¶ 15.

¶ 23    In construing FOIA, we are guided by familiar principles. The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Better Government Ass'n*, 2017 IL 121124, ¶ 22; *Southern Illinoisan v. Department of Public Health*, 218 Ill. 2d 390, 415 (2006). A statute is viewed as a whole. Therefore, words and phrases must be construed in light of other relevant statutory provisions and not in

---

[3]Beyond the claims presented here, the City additionally appealed from the circuit court's denial, in *In re* Appointment of Special Prosecutor, No. 11-Misc.-46 (Cir. Ct. Cook County), of the City's motion to modify the protective order. The appellate court affirmed that order, and the City did not file a petition for leave to appeal to this court.

[4]Before this court, neither the City nor the OSP challenges the appellate court's judgment on *in camera* inspection of the OSP's billing records.

isolation. *Southern Illinoisan*, 218 Ill. 2d at 415; *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004). Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous. Also, the court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another. *Better Government Ass'n*, 2017 IL 121124, ¶ 22; *Williams*, 208 Ill. 2d at 487. Further, a court presumes that the legislature did not intend absurdity, inconvenience, or injustice in enacting legislation. *Southern Illinoisan*, 218 Ill. 2d at 415.

¶ 24 FOIA expressly declares its underlying public policy and legislative intent. Section 1 provides that "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2014). Section 1 explains that "[s]uch access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Consequently, section 1 provides that "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.*

¶ 25 Based on this clear expression of legislative intent, this court has held that public records are presumed to be open and accessible. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997). FOIA is to be liberally construed to achieve the goal of providing the public with easy access to government information. *Southern Illinoisan*, 218 Ill. 2d at 416 (and cases cited therein). Consequently, FOIA's exceptions to disclosure are to be construed narrowly so as not to defeat the intended statutory purpose. *Id.* at 416-17. Thus, when a public body receives a proper request for information, it must comply with that request unless one of FOIA's narrow statutory exemptions applies. 5 ILCS 140/3(a) (West 2014); see *Southern Illinoisan*, 218 Ill. 2d at 417; *Lieber*, 176 Ill. 2d at 407-08.[5] Having discussed the statutory backdrop, we address the BGA's arguments as to each defendant.

¶ 26                                        A. The OSP

¶ 27 We first address the BGA's contention that the appellate court erred in affirming the chancery court's order dismissing count I of its complaint. In count I, the BGA alleged the OSP violated section 3(a) of FOIA by failing to disclose certain materials generated in the course of the grand jury investigation. The chancery court dismissed count I pursuant to section 2-619(a)(9) of the Code of Civil Procedure.

¶ 28 The purpose of a motion to dismiss under section 2-619 is to dispose of issues of law and easily proved issues of fact early in the litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). Section 2-619(a)(9) permits involuntary dismissal where the alleged claim is barred by an affirmative matter that avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2014). The moving party admits the legal sufficiency of the complaint but asserts that some affirmative matter defeats the claim. When ruling on a section 2-619 motion,

---

[5]The City and the OSP are "public bodies" in terms of FOIA. See 5 ILCS 140/2(a) (West 2014) (City); 2017 IL App (1st) 161376, ¶ 56 (OSP).

a court must interpret all pleadings and supporting documents in favor of the nonmoving party. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. An affirmative matter is "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 486 (1994).

¶ 29     Section 7(1) of FOIA provides that certain categories of records "shall be exempt from inspection and copying." 5 ILCS 140/7(1) (West 2014). Pertinent to this appeal, section 7(1)(a) provides for the following disclosure exemption: "Information specifically prohibited from disclosure by federal or State law or rules and regulations implementing federal or State law." *Id.* § 7(1)(a). The chancery court found that disclosure of the requested materials was prohibited under section 112-6(c)(1) of the Code (725 ILCS 5/112-6(c)(1) (West 2014)), which bars disclosure of "matters occurring before the Grand Jury," rendering the requested materials exempt from disclosure pursuant to section 7(1)(a) of FOIA.

¶ 30     "The grand jury is an English institution, brought to this country by the early colonists and incorporated in the Constitution by the Founders." *People v. Jones*, 19 Ill. 2d 37, 42 (1960). The function of a grand jury is not to determine the sufficiency of evidence to convict (*United States v. Calandra*, 414 U.S. 338, 343-44 (1974)) but rather to determine whether there is probable cause to believe a crime has been committed and, in the process, exonerate innocent individuals accused of crimes (*In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 392 (1992)).

¶ 31     The rule of secrecy surrounding grand jury proceedings is a common-law concept recognized as a fundamental component of both federal and state criminal procedural law. See, *e.g.*, *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye."); *People v. Boston*, 2016 IL 118661, ¶ 49 (Burke, J., dissenting) ("Grand jury proceedings are secret [citation], and this secrecy is fundamental to our criminal procedure." (Internal quotation marks omitted.)).

¶ 32     The policy reasons given for maintaining grand jury secrecy are preventing the flight of persons under indictment or investigation, protecting grand jurors from possible undue influence or intimidation, preventing subornation of perjury, encouraging prospective witnesses to testify freely and truthfully, and protecting the innocent from unwarranted exposure. See, *e.g.*, *Douglas Oil Co.*, 441 U.S. at 219 n.10; *People v. Johnson*, 31 Ill. 2d 602, 605-06 (1964); *Board of Education, Community Unit School District No. 200 v. Verisario*, 143 Ill. App. 3d 1000, 1010-11 (1986).

¶ 33     Section 112-6 of the Code addresses the secrecy of grand jury proceedings in the Illinois state criminal justice system. Subsection (b) of section 112-6 provides that "[m]atters other than the deliberations and vote of any grand juror shall not be disclosed by the State's Attorney, except as otherwise provided for in subsection (c)." 725 ILCS 5/112-6(b) (West 2014). Subsection (c)(1), subject to certain exceptions not relevant here, prohibits the disclosure of "matters occurring before the Grand Jury." *Id.* § 112-6(c)(1).

¶ 34     The BGA contends the appellate court erred in finding that the materials it sought constituted "matters occurring before the grand jury." It argues the court applied an "unduly broad interpretation" of the phrase. According to the BGA, the phrase should be construed narrowly when it serves as a basis for an exemption under FOIA. The BGA further contends

its application should be limited to exempting material actually presented to the grand jury and to documents showing what transpired in the grand jury room. We disagree.

¶ 35 Section 112-6 of the Code is modeled after Rule 6(e) of the Federal Rules of Criminal Procedure. *People ex rel. Sears v. Romiti*, 50 Ill. 2d 51, 58-59 (1971). Rule 6(e) prohibits grand jurors, government attorneys, and other persons attached to federal grand jury proceedings from disclosing a "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B)(i)-(vii). Because the federal and state statutes incorporate substantially similar language, we may look to federal cases interpreting the federal statute in construing the similarly worded Illinois statute. See *People ex rel. Lignoul v. City of Chicago*, 67 Ill. 2d 480, 484 (1977); *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 24 (looking to federal case law for guidance in construing phrase "decision on the merits" as used in state class certification statute where statute was modeled on federal rule of civil procedure); *Verisario*, 143 Ill. App. 3d at 1005.

¶ 36 Federal courts interpreting the phrase "matters occurring before the grand jury" for purposes of Rule 6(e) have found that the phrase encompasses any material that tends to "reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." (Internal quotation marks omitted.) *Lopez v. Department of Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005); see *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) ("The term 'matters occurring before the grand jury' has been defined to include anything that will reveal what transpired during the grand jury proceedings.").

¶ 37 In its FOIA request, the BGA sought disclosure of the following material from the OSP: "Documents sufficient to show the names of everyone interviewed by Dan Webb's special prosecutors in relation to the David Koschman/Richard Vanecko case," "[c]opies of any and all statements by and communications with Daley family members and their attorneys" and "the same information for Mara Georges [(the City's Corporation Counsel)]," and "[c]opies of any and all itemized invoices and billing records for the special prosecutor's team."

¶ 38 The appellate court determined that all of the requested material, except for the itemized invoices and billing records, constituted "matters occurring before the grand jury" protected from public disclosure by section 112-6 of the Code because their disclosure would reveal the identity of the witnesses and the strategy or direction of the grand jury investigation. 2017 IL App (1st) 161376, ¶¶ 64-67.

¶ 39 We agree with the appellate court's analysis given the facts in the instant proceedings. In this particular case, the material the appellate court found was protected from disclosure by section 112-6 clearly contained information related to the grand jury proceeding that, if made public, would disclose matters occurring before the grand jury. The BGA's first FOIA request would reveal the identities of the witnesses, which are matters occurring before the grand jury. See, *e.g.*, *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 505 (D.C. Cir. 1998) (matters occurring before the grand jury include the identities of witnesses, and the government is not free to "publish lists of prospective or former grand jury witnesses" (internal quotation marks omitted)). And in regard to the BGA's second FOIA request, it cannot seriously be contended that the disclosure of such statements and communications would not be reflective of statements made before the grand jury revealing the strategy or direction of the grand jury investigation.

¶ 40      The BGA alternatively argues that, even if the requested materials constitute "matters occurring before the grand jury," they should still be disclosed pursuant to subsection (c)(3) of section 112-6 of the Code. This subsection allows disclosure of grand jury materials "when a law so directs." 725 ILCS 5/112-6(c)(3) (West 2014). The BGA contends that section 3(a) of FOIA is such a law.

¶ 41      Section 3(a) of FOIA provides in relevant part that "[e]ach public body shall make available to any person for inspection or copying all public records." 5 ILCS 140/3(a) (West 2014). The BGA argues that, under subsection (c)(3) of section 112-6 of the Code, section 3(a) of FOIA is a law that directs the disclosure of the grand jury materials at issue.

¶ 42      The BGA made the same argument in the appellate court, and it was rejected. The appellate court reasoned:

> "We believe that the clause 'when a law so directs' in section 112-6(c)(3) addresses situations of particularized necessity, such as disclosure to a court clerk or to confront a witness in a criminal trial with his prior contrary testimony. Despite exhaustive briefing, no party has cited a case where section 112-6 of the Code was held *not* to trigger a section 7(1)(a) exemption. We agree with the OSP that adopting the BGA's expansive interpretation of 'when a law so directs' would render the secrecy provisions in section 112-6 of the Code 'a dead letter,' because FOIA would effectively nullify them." (Emphasis in original.) 2017 IL App (1st) 161376, ¶ 63.

¶ 43      We agree with the appellate court's reasoning. If we adopted the BGA's position, documents could be disclosed through a FOIA request, even if they pertained to matters occurring before the grand jury. As a result, there would be few if any grand jury matters that could not be obtained through a FOIA request. Such a rule would effectively nullify the grand jury secrecy protections provided by section 112-6.

¶ 44      The BGA contends that, even if we adopt the appellate court's "not improper" analysis, which we examine in the next section of this opinion, we should still find that it was "improper" for the OSP to withhold the requested material given the public interest in their disclosure and in light of the fact that some of the material had already been disclosed. Again, we must disagree.

¶ 45      The material the BGA claims the OSP previously disclosed consisted of material the criminal court requested to enable it to assess the progress of the criminal investigation. The OSP was simply executing its court-mandated duty as a special prosecutor when it submitted the material to the criminal court. Accordingly, based on our subsequent discussion, the OSP did not "improperly" withhold the requested material in terms of section 11(d) of FOIA. See 2017 IL App (1st) 161376, ¶ 46 (compliance with lawful court order does not constitute "improper" withholding).

¶ 46      Also, we disagree with the BGA's assertion that disclosure of the requested grand jury material was in the public interest. In discussing the need for maintaining secrecy of grand jury proceedings in the federal court system under Federal Rule of Criminal Procedure 6(e), the United States Supreme Court has held that disclosure of grand jury materials is appropriate only in cases where the need for disclosure outweighs the public interest in secrecy. *Douglas Oil Co.*, 441 U.S. at 223.

¶ 47      A party seeking disclosure of grand jury material must demonstrate a "particularized need" for disclosure that outweighs the policies supporting the secrecy of grand jury proceedings.

*Wisconsin v. Schaffer*, 565 F.2d 961, 965 (7th Cir. 1977). Parties must show that the material they seek is needed to avoid a possible injustice and that their request is structured to cover only material so needed. *In re Matter of Grand Jury Proceedings, Special September, 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991) (citing *Douglas Oil Co.*, 441 U.S. at 222).

¶ 48 The BGA has not shown particularized need for disclosure of the requested material. Instead, the BGA argues that disclosure of the requested material would serve the public interest in detecting and deterring political and prosecutorial corruption. Such generalized statements do not constitute "particularized need." See, *e.g.*, *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978) (unsupported speculation about what disclosure would reveal insufficient to constitute a "particularized need").

¶ 49 In sum, section 112-6 of the Code prohibited disclosure of the requested material, triggering the exemption provided by section 7(1)(a) of FOIA. Therefore, we affirm that portion of the appellate court's judgment that affirmed the chancery court's order dismissing count I of the BGA's complaint. We likewise leave undisturbed that portion of the appellate court's judgment reversing the chancery court's order in part and remanding for *in camera* review of the OSP's invoices and billing records.

¶ 50                                B. The City

¶ 51 The BGA contends that the appellate court erred in reversing the chancery court's grant of judgment on the pleadings in favor of the BGA and granting judgment on the pleadings in favor of the City. The BGA argues that the criminal court's protective orders cannot provide the City with a basis for not complying with the BGA's FOIA requests.

¶ 52 A motion for judgment on the pleadings, as provided by section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2014)), is essentially a motion for summary judgment that is limited to the pleadings. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 227 (2010). In ruling on the motion, a court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. All well-pled facts and reasonable inferences therefrom are taken as true. *Gillen*, 215 Ill. 2d at 385; *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 56-57 (2004). Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Lebron*, 237 Ill. 2d at 227; *Gillen*, 215 Ill. 2d at 385.

¶ 53 Throughout these proceedings, the City cited *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375 (1980), to alternatively argue that it would be held in contempt of court if it disregarded the criminal court's protective orders and that the legislature did not intend for public bodies to commit contempt of court in complying with FOIA requests. As earlier noted, the chancery court rejected this argument, but the appellate court accepted it. The appellate court noted that section 11(d) of FOIA authorizes a circuit court to order FOIA disclosure only where the public body has "improperly withheld" the requested documents. 2017 IL App (1st) 161376, ¶ 45; see 5 ILCS 140/11(d) (West 2014). Relying on *GTE Sylvania*, which construed the federal counterpart to section 11(d), the appellate court held that "a lawful court order must take precedence over the disclosure requirements of FOIA and that a public body refusing to disclose documents because a court order commands it to do so does not always withhold those documents 'improperly.' " 2017 IL App (1st) 161376, ¶ 46.

- 10 -

¶ 54    The BGA argues that we should not refer to federal FOIA decisions in construing section 11(d) of FOIA because "our statute differs materially from the federal FOIA statute." We disagree. The General Assembly patterned FOIA after the federal FOIA. Compare 5 ILCS 140/1 *et seq.* (West 2014), with 5 U.S.C. § 552 (2012). Both statutes mandate that a public body must comply with a proper request for disclosure unless the requested material falls within a specific and narrowly construed statutory exemption. Compare *Southern Illinoisan*, 218 Ill. 2d at 416-17, and *Lieber*, 176 Ill. 2d at 407-08 (both cases discussing FOIA), with *Milner v. Department of the Navy*, 562 U.S. 562, 565 (2011) (discussing federal FOIA).

¶ 55    Due to the similarity of the statutes, Illinois courts often look to federal case law construing the federal FOIA for guidance in construing FOIA. See *Hamer v. Lentz*, 132 Ill. 2d 49, 58 (1989); *Korner v. Madigan*, 2016 IL App (1st) 153366, ¶ 10; *Hites v. Waubonsee Community College*, 2016 IL App (2d) 150836, ¶ 60; *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 21. Further, case law from other states construing similar freedom of information statutes may be persuasive. See *Better Government Ass'n v. Village of Rosemont*, 2017 IL App (1st) 161957, ¶ 24.

¶ 56    Section 11 of FOIA provides that any person who is denied access to inspect or copy any public record by a public body may file a complaint in the appropriate circuit court for declaratory or injunctive relief. 5 ILCS 140/11(a)-(c) (West 2014). Specifically, section 11(d) of FOIA provides: "The circuit court shall have the jurisdiction to enjoin the public body from withholding public records and to order the production of any public records *improperly withheld* from the person seeking access." (Emphasis added.) *Id.* § 11(d). Similarly, section 552(a)(4)(B) of the federal FOIA provides that, on complaint, the appropriate federal district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records *improperly withheld* from the complainant." (Emphasis added.) 5 U.S.C. § 552(a)(4)(B) (2012).

¶ 57    The United States Supreme Court has construed section 552(a)(4)(B) of the federal FOIA to require a showing of three statutory components before a federal court may force disclosure pursuant to the statute. The agency must have (1) improperly (2) withheld (3) agency records. *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980). *GTE Sylvania* focused on whether the first requirement, whether the requested information had been *improperly* withheld, had been satisfied. *GTE Sylvania*, 445 U.S. at 384.

¶ 58    In *GTE Sylvania*, a federal district court enjoined the Consumer Product Safety Commission (CPSC) from releasing to the public certain documents. After the injunction was issued, Consumers Union filed a complaint in another federal district court seeking disclosure pursuant to the federal FOIA. *Id.* at 377-79. The Supreme Court reasoned that the CPSC did not "improperly" withhold the requested information because a federal court had prohibited its disclosure. Far from acting "improperly," the agency simply lacked any discretion to exercise. *Id.* at 386. The Court explained that its conclusion was "further supported by the established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Id.* (collecting cases). Therefore, the agency was required to obey the injunctions out of respect for the judicial process. *Id.* at 386-87. The Court concluded as follows:

"There is nothing in the legislative history to suggest that in adopting the Freedom of Information Act to curb agency discretion to conceal information, Congress intended to require an agency to commit contempt of court in order to release documents. *** To construe the lawful obedience of an injunction issued by a federal district court with jurisdiction to enter such a decree as 'improperly' withholding documents under the Freedom of Information Act would do violence to the common understanding of the term 'improperly' and would extend the Act well beyond the intent of Congress." *Id.* at 387.[6]

¶ 59    Before this court, the BGA argues that "improper withholding" is not a substantive legal doctrine in Illinois but merely expresses the conclusion that withheld information is not exempt from disclosure. In other words, records are "improperly withheld" when they are withheld for any reason outside of the statutory list of exemptions.

¶ 60    This argument is generally correct. As earlier discussed, a public body must comply with a proper request for disclosure unless the requested material falls within a specific and narrowly construed statutory exemption. *Southern Illinoisan*, 218 Ill. 2d at 416-17; *Milner*, 562 U.S. at 565. Accordingly, based on the exclusive nature of the exemption scheme, "agency records which do not fall within one of the exemptions are 'improperly' withheld." *Tax Analysts*, 492 U.S. at 151.

¶ 61    However, the BGA further argues that the United States Supreme Court's approach in *GTE Sylvania*, which the appellate court adopted, "requires a second analysis of 'propriety' in every FOIA case," based on standards that are nowhere provided. As did the Supreme Court, we reject the "suggestion that *GTE Sylvania* invites courts in every case to engage in balancing *** to determine whether there has been an unjustified denial of information. The FOIA invests courts neither with the authority nor the tools to make such determinations." *Id.* at 155.

¶ 62    Rather, *GTE Sylvania* explained that the concerns underlying the federal FOIA were inapplicable because that agency had made no effort to avoid disclosure and, indeed, it was not the agency's decision to withhold the requested documents. *GTE Sylvania*, 445 U.S. at 386. While "*GTE Sylvania* represents a departure from the FOIA's self-contained exemption scheme, this departure was a slight one at best, and was necessary in order to serve a critical goal independent of the FOIA—the enforcement of a court order." *Tax Analysts*, 492 U.S. at 155. "Part and parcel of the *GTE Sylvania* decision is the principle that an injunction issued by one court against the disclosure of information may not be collaterally attacked in another court in a FOIA lawsuit seeking disclosure of that information." *Alley v. United States Department of Health & Human Services*, 590 F.3d 1195, 1203 (11th Cir. 2009); see *Wagar v. United States Department of Justice*, 846 F.2d 1040, 1046 (6th Cir. 1988) (explaining that "the facts of the *GTE Sylvania* case did not concern the evils that the FOIA was intended to prevent because the CPSC was simply following a lawful court order"); *Bangor Publishing Co. v. Town of Bucksport*, 682 A.2d 227, 229 (Me. 1996) (concluding that "the [FOIA] actions are impermissible collateral attacks on a valid protective order. *** The protective order, as it stands, is just and proper cause for the nondisclosure of the documents.").

---

[6]The Court indicated two exceptions that do not pertain to the instant case. An injunction does not take precedence over a FOIA request where (1) the court issuing the injunction lacked personal or subject-matter jurisdiction (*GTE Sylvania*, 445 U.S. at 386) or (2) the injunction had " 'only a frivolous pretense to validity' " (*id.* (quoting *Walker v. City of Birmingham*, 388 U.S. 307, 315 (1967))).

¶ 63      For these reasons, we likewise reject the BGA's argument that applying *GTE Sylvania* to FOIA "would create a dichotomy" between proceedings on judicial review and proceedings before the Public Access Counselor (PAC) (see 5 ILCS 140/9.5 (West 2014)). Section 9.5 of FOIA provides that, when a public body denies a request to disclose a public document, the requester may ask the PAC to review the denial. *Id.* This section provides requesters with an alternative avenue of redress when a public body denies a FOIA request "other than going straight into a lengthy and expensive court battle." Sarah Klaper, *The Sun Peeking Around the Corner: Illinois' New Freedom of Information Act as a National Model*, 10 Conn. Pub. Int. L.J. 63, 73 (2010). The BGA argues that "a protective order or other 'not improper' basis for withholding a record could be used in court but not in an adjudication before the PAC." *GTE Sylvania* arose in a different context than a typical FOIA case and does not concern FOIA's self-contained statutory exemption scheme but rather serves the independent goal of enforcing court orders. *Tax Analysts*, 492 U.S. at 155.

¶ 64      Indeed, the reasoning in *GTE Sylvania* and its progeny accords with established Illinois law. As this court explained long ago:

> "The power of the courts to enforce their orders and judgments is a necessary incident to the administration of justice, and if they were without power to compel obedience or to prevent unwarranted interference with the administration of justice they could not perform their functions or secure the rights of litigants, however important." *Court Rose No. 12, Foresters of America v. Corna*, 279 Ill. 605, 607-08 (1917).

Accordingly, where a circuit court with personal and subject-matter jurisdiction issues an injunction, the injunction must be obeyed, however erroneous it may be, until it is modified or set aside by the court itself or reversed by a higher court. Disobedience of such an injunction constitutes, and is punishable as, contempt of the lawful authority of the court. *Board of Education of the Kankakee School District No. III v. Kankakee Federation of Teachers Local No. 886*, 46 Ill. 2d 439, 445 (1970); see *Court Rose No. 12*, 279 Ill. at 607 (collecting cases); *People ex rel. Illinois State Dental Society v. Norris*, 79 Ill. App. 3d 890, 895 (1979) (same).[7]

¶ 65      The BGA argues that this court "should not allow public bodies to benefit from protective orders they were involved in procuring." This argument has no basis in the record. The criminal court issued its original, June 2012, protective order at the request of the OSP—not the City. Although the criminal court issued its June 2014 protective order on the City's motion, that order merely clarified its original order, which the City did not procure.

¶ 66      In the case at bar, after discussing *GTE Sylvania*, the appellate court concluded:

> "We see no reason, nor any textual distinction in the Illinois FOIA, why the rule articulated in *GTE Sylvania* should not apply with equal force here. *** We merely hold, as did the United States Supreme Court in *GTE Sylvania*, that 'respect for judicial process' requires that a lawful court order must take precedence over the disclosure requirements of FOIA and that a public body refusing to disclose documents because a court order commands it to do so does not always withhold those documents 'improperly.' " 2017 IL App (1st) 161376, ¶ 46.

---

[7]The BGA argues that the criminal court's protective orders are erroneous because a court may not "impose a gag order on the recipient of a grand jury subpoena in Illinois." This argument is irrelevant to the City's obligation to comply with the orders.

Therefore, following *GTE Sylvania*, we hold that a lawful court order takes precedence over the disclosure requirements of FOIA.

¶ 67     The rule that a FOIA lawsuit may not be used to collaterally attack an injunction prohibiting disclosure of records does not mean that there is no remedy for the FOIA requester. Rather, the requester must first have the court that issued the injunction modify or vacate its order barring disclosure. If the issuing court refuses, the FOIA requester may challenge the refusal in a direct appeal rather than an impermissible collateral attack. See *Alley*, 590 F.3d at 1204 (collecting cases); see generally *People v. Nance*, 189 Ill. 2d 142, 145 (2000); *Bowman Dairy Co. v. Lyons*, 2 Ill. 2d 625, 629-30 (1954); *Illinois State Dental Society*, 79 Ill. App. 3d at 895-96; *People ex rel. Watson v. Spinka*, 58 Ill. App. 3d 729, 733 (1978).

¶ 68     Guided by *GTE Sylvania* and its progeny, and established Illinois law, we conclude that the City was required to obey the protective orders out of respect for the judicial process. Consequently, based on the facts of this case, the protective orders took precedence over the disclosure requirements of FOIA. Therefore, we hold that the City did not "improperly withhold" the requested documents within the meaning of section 11(d) of FOIA. In light of this holding, we need not address the City's alternative argument that the protective orders constitute state law that renders the requested documents exempt from disclosure pursuant to section 7(1)(a) of FOIA. See, *e.g.*, *In re M.M.*, 2016 IL 119932, ¶ 31. We uphold the appellate court's grant of judgment on the pleadings in favor of the City.

¶ 69     We note that, if this court had ordered the City to comply with the BGA's FOIA request, the City asks us to modify the protective orders to allow compliance. However, in light of our disposition, we need not and do not address this issue. See, *e.g.*, *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 35.

¶ 70                                    III. CONCLUSION

¶ 71     For the foregoing reasons, the judgment of the appellate court, which affirmed in part and reversed in part the orders of the circuit court, is affirmed.

¶ 72     Appellate court judgment affirmed.

¶ 73     Circuit court judgments affirmed in part and reversed in part.

¶ 74     JUSTICE THOMAS took no part in the consideration or decision of this case.