2021 IL App (1st) 200574

FIFTH DIVISION
MARCH 31, 2021

No. 1-20-0574

| | | |
|---|---|---|
| CHARLES GREEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CH 17646 |
| | ) | |
| THE CHICAGO POLICE DEPARTMENT, | ) | Honorable |
| | ) | Alison C. Conlon, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justice Hoffman concurred in the judgment and opinion.
Presiding Justice Delort dissented, with opinion.

**OPINION**

¶ 1 This case arises out of plaintiff-appellee Charles Green's 2015 request, pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)), to the Chicago Police Department (CPD) for all closed complaint register files (CR files) concerning all Chicago police officers. When the CPD failed to respond to his request, Mr. Green filed suit in the circuit court of Cook County, seeking, *inter alia*, an order directing the CPD to produce the requested files. While Mr. Green's lawsuit was pending in the circuit court of Cook County, an injunction was also in place in that court, prohibiting the CPD from releasing any CR files over four years old from the date of any FOIA request. The trial court continued Mr. Green's lawsuit while the injunction that prohibited the release of any files over four years old was being litigated. This court ultimately vacated the injunction in 2016.

¶ 2　　In 2018, following the vacatur of the injunction, Mr. Green and CPD filed cross motions for summary judgment in the circuit court of Cook County related to Mr. Green's pending complaint seeking to obtain the CR files after the CPD ignored his initial FOIA request. On January 10, 2020, the trial court granted Mr. Green's motion for summary judgment, denied the CPD's motion, and ordered the CPD to turn over all CR files dated 1967-2011. (The court had previously ordered the CPD to turn over the CR files dated 2011-2015.)

¶ 3　　On appeal, the CPD argues that (1) the trial court lacked jurisdiction to order it to produce files that were subject to an injunction at the time that they were requested and (2) the court erred in rejecting its belated claim that producing 48 years of closed CR files would be unduly burdensome. For the following reasons, we reverse the judgment of the circuit court of Cook County.

¶ 4　　　　　　　　　　　　　　　　　BACKGROUND

¶ 5　　In 1986, Mr. Green was convicted of four counts of murder, aggravated arson, residential burglary, home invasion, armed robbery, and armed violence, arising out of a quadruple homicide. Mr. Green, who was 16 years old at the time of the crimes, was sentenced to life imprisonment. Following Mr. Green's conviction, the lead detective who had investigated the homicide was found to have coerced inculpatory statements from arrestees and abused those in custody on several occasions. There was no specific finding related to this detective regarding Mr. Green. Mr. Green was released from custody in 2009 after numerous appeals, but his conviction stands.

¶ 6　　On November 18, 2015, Mr. Green, through counsel, sent a FOIA request to the CPD, seeking "any and all closed complaint register files that relate to Chicago Police Officers." When the CPD did not respond to this request, Mr. Green filed suit in the circuit court of Cook County

on December 4, 2015. In his complaint, Mr. Green alleged that the CPD violated FOIA by failing to produce the requested documents or otherwise respond to his request. He sought, *inter alia*, an order requiring the CPD to produce the requested records with any exempted material redacted.

¶ 7     The CPD answered Mr. Green's complaint and admitted that it had not responded to Mr. Green's initial FOIA request. The CPD also asserted two affirmative defenses, arguing (1) that several documents or portions of documents encompassed in Mr. Green's request were exempt from production because they contained private or personal information and (2) that it was barred from producing CR files over four years old pursuant to an injunctive order in an unrelated case that was in place at the time of Mr. Green's FOIA request.

¶ 8     The injunctive order to which the CPD referred in its answer to Mr. Green's lawsuit, arose out of litigation between the Fraternal Order of Police (FOP), the City of Chicago (City), and the CPD. That litigation was prompted by an August 2014 FOIA request to the CPD by the Chicago Tribune (Tribune) and the Chicago Sun-Times (Sun-Times). The Tribune and the Sun-Times requested a list of names of police officers who had received at least one complaint dating back to 1967, along with the CR number of the complaint. The City informed the FOP that it intended to release the requested information. In response, the FOP sought to enjoin the City from producing CR files dating back to 1967 pursuant to any FOIA requests. The FOP cited a provision in the collective bargaining agreement between the City and the FOP, requiring the City to destroy CPD files over four years old.

¶ 9     A preliminary injunction was entered in December 2014 that prohibited the release of a list of police officers against whom there were complaints that were over four years old as of the date of the Tribune and Sun-Times's FOIA request. A second preliminary injunction was entered in

May 2015. That injunction more broadly prohibited the City and the CPD from releasing *any* CR files more than four years old as of the date of *any* FOIA request. The issue of whether the City had violated the collective bargaining agreement by not destroying CPD CR files that were more than four years old was brought to arbitration while the injunction was still in effect. And one year later, an arbitrator ruled that the City had violated the collective bargaining agreement by preserving outdated CR files and disciplinary records. The arbitrator ordered the City to purge its records of all police misconduct investigations and discipline that were more than five years old.

¶ 10   The City appealed both the December 2014 and the May 2015 preliminary injunctions. This court vacated both injunctions as against public policy. *Fraternal Order of Police, Chicago Lodge No. 7 v. City of Chicago*, 2016 IL App (1st) 143884, ¶¶ 35-40. Subsequently, this court also vacated the arbitration award that had ordered the files destroyed, finding it to be against public policy. *City of Chicago v. Fraternal Order of Police*, 2019 IL App (1st) 172907, ¶¶ 37-40. That decision was later affirmed by our supreme court. *City of Chicago v. Fraternal Order of Police, Chicago Lodge No. 7*, 2020 IL 124831, ¶¶ 43-44.

¶ 11   For case management purposes and due to the pending FOP litigation, the trial court had consolidated Mr. Green's instant lawsuit with the FOP case that sought to enjoin the release of files older than four years. That consolidation lasted until January 10, 2018, at which time the court set a schedule for dispositive motions in the instant case. In March 2018, the CPD moved for partial summary judgment, arguing that Mr. Green was only entitled to the CR files that were not subject to the injunction. Specifically, it argued that it should only have to produce CR files dated after 2011, or four years prior to Mr. Green's 2015 request. In its motion, the CPD also acknowledged

that when it failed to respond to the request within five business days pursuant to FOIA, it "waived its right to deny Plaintiff's request on the grounds that it was unduly burdensome."

¶ 12 On July 25, 2018, the trial court denied the CPD's motion for summary judgment, despite finding that the CPD did not wrongfully fail to produce the CR files dated 1967-2011 at the time they were requested. The trial court further ordered the parties to confer with each other to determine a schedule for production of the CR files dated from 2011-2015, as those files were not subject to the injunction. Then, in September 2018, the trial court ordered the CPD to produce the CR files dated 2011-2015 by December 31, 2018.

¶ 13 Between July 2018 and February 2019, the parties filed cross-motions for summary judgment. During this time, the CPD did not turn over any CR files dated 2011-2015. At an April 5, 2019, hearing on the parties' pending motions, including a motion by Mr. Green to compel the CPD to produce the files dated 2011-2015, the CPD stated that it was working on creating an online data portal for the files dated 2011-2015 but was still in the process of reviewing and redacting relevant files.

¶ 14 With regard to the issue of production of the 1967-2011 files, the trial court agreed that the CPD could not be sanctioned for withholding the files dated 1967-2011, since, at the time they were requested, the CPD was prohibited from releasing them by the injunctions that were then in place. Nevertheless, the trial court held that once the injunctions were lifted, there was no reason why Mr. Green should be required to submit a new FOIA request to access the files. Instead, the court again ordered the parties to work together to determine a schedule for producing the CR files dated 1967-2011. The trial court did not rule on the parties' cross motions for summary judgment

at that time, stating it needed more details on the "practicalities," but indicated it would probably grant both parties' motions in part.

¶ 15    Over the next eight months, the parties filed several motions. The CPD filed a motion to reconsider the trial court's ruling of April 5, which ordered the parties to work together to determine a schedule for production of the files dated 1967-2011. Mr. Green moved twice to compel compliance with the court's April 5, 2019, order, invoking the court's contempt power, in light of the CPD's failure to comply with the trial court's previous December 31, 2018, deadline for production of the CR files dated 2011-2015.

¶ 16    The trial judge who had issued the April 5, 2019, order retired from the bench in the midst of the proceedings. On January 10, 2020, the trial court, with a new judge presiding, issued an order disposing of all pending motions in the case. In that order, the trial court held that the April 5 order contained sufficient findings to resolve the parties' cross motions for summary judgment. To that end, the court entered summary judgment in favor of Mr. Green and against the CPD, describing it "as a ministerial act." The court further denied CPD's motion for reconsideration. Finally, the court granted, in part, Mr. Green's motion to compel after finding that the CPD willfully and intentionally failed to comply with the court's order to produce the files dated 2011-2015. The trial court imposed a $4000 civil penalty against the City. The trial court ordered CPD to produce these files dated 1967-2011 by December 31, 2020, without specifying the rate at which they were to be produced. On the other hand, with respect to the CR files dated 2011-2015, the court ordered CPD to produce them at a rate of at least 3000 files per month until production was complete.

¶ 17 On March 16, 2020, the trial court granted the CPD's motion for a finding that there was no just reason for delaying appeal of the January 10, 2020, order, which granted Mr. Green's motion for summary judgment and denied the CPD's motion for summary judgment. The trial court stayed production of the CR files dated 1967-2011 pending the outcome of this appeal.

¶ 18                                         ANALYSIS

¶ 19 We note that we have jurisdiction to review this matter, as the CPD filed a timely notice of appeal following the trial court's finding that there was no just reason for delaying appeal of its January 10, 2020, order. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); R. 303 (eff. July 1, 2017).

¶ 20 This appeal concerns only the order granting summary judgment in favor of Mr. Green and directing the CPD to produce the CR files dated 1967-2011. In order to prevail on a motion for summary judgment, the moving party must show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). We review the trial court's grant of summary judgment *de novo*. *Gary v. City of Calumet City*, 2020 IL App (1st) 191812, ¶ 26.

¶ 21 The dispositive issue on appeal in this case, is whether the trial court had jurisdiction to order the production of the 1967-2011 records after it determined that the CPD did not improperly withhold those records at the time they were requested. Resolution of this issue turns on section 11 of FOIA, which allows any person who is denied access to public records by a public body to file suit for injunctive or declaratory relief. 5 ILCS 140/11(a) (West 2018). (Significantly, the failure to timely respond to a FOIA request is considered a denial. *Id.* § 3(d).) Section 11(d) goes on to vest the trial court with "jurisdiction to enjoin the public body from withholding public records and to order the production of any public records improperly withheld from the person

seeking access." *Id.* § 11(d). From this, it follows that the court may only order production of public records if they are "improperly withheld." See *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 57.

¶ 22    At the outset, we must determine the point in time at which a court should evaluate the propriety of a public body's decision to withhold documents. The question is whether the decision should be evaluated at the time the FOIA request is denied or at some later stage of litigation, depending on the circumstances. Courts confronting this issue have overwhelmingly considered whether the documents requested were improperly withheld *at the time the decision to withhold was made*. For example, in *Bonner v. United States Department of State*, 928 F.2d 1148, 1149 (D.C. Cir. 1991), the plaintiff filed a FOIA request with the United States State Department.[1] The State Department produced a number of the requested documents in full but released 1033 documents with partial redactions based on FOIA exemptions. *Id.* To test the validity of the redactions, the parties agreed to a sampling procedure in which the plaintiff would choose 63 out of the 1033 partially redacted documents for which the State Department would prepare an index summarizing the withheld information in those documents and the reason for the withholding. *Id.* When the State Department provided the index to the plaintiff, it addressed only 44 of the 63 documents, because, during the time between the plaintiff's FOIA request and the preparation of the index of representative documents, 19 of the 63 documents were no longer classified and could be released in full. *Id.* The plaintiff argued, in relevant part, that given that approximately one-third of the sample documents were declassified, one-third of the partially-redacted documents

---

[1]Because of the similarity of the Illinois FOIA and the federal FOIA, Illinois courts frequently look to federal case law in construing the Illinois FOIA. See *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 55.

that were *not* part of the sample must also have become declassified during that time period and could also be released in full. *Id.* at 1153. The Court of Appeals agreed but held that it would not require the State Department to " 'follow an endlessly moving target,' " and reprocess the 1033 partially redacted documents to determine which ones were no longer classified. *Id.* (quoting *Meeropol v. Meese*, 790 F.2d 942, 959 (D.C. Cir. 1986)). The court explained that requiring an agency to "adjust or modify its FOIA responses based on post-response occurrences could create an endless cycle of judicially mandated reprocessing." *Id.* at 1152.

¶ 23    Similarly, in *Lesar v. United States Department of Justice*, 636 F.2d 472, 479 (D.C. Cir. 1980), the defendant initially withheld certain classified documents otherwise responsive to the plaintiff's FOIA request, but by the time the plaintiff appealed the lower court's decision, some of those withheld documents were declassified. The Court of Appeals rejected the plaintiff's argument that it was entitled to those subsequently declassified documents, holding that it would assess the agency's decision to withhold the documents under the circumstances that existed at the time the decision was made. *Id.* at 480; see also *American Civil Liberties Union v. National Security Agency*, 925 F.3d 576, 601 (2d Cir. 2019) (rejecting plaintiff's argument that it should order agency to reprocess documents based on new disclosures that postdated agency's initial FOIA decision on basis that *FOIA decision should be evaluated as of time it was made*). Those cases provide clarity for our determination in the case before us. Specifically, the propriety of a response must be judged *at the time the decision denying the FOIA request was made*.

¶ 24    Having determined that we should evaluate the CPD's response to Mr. Green's FOIA request at the time it was made, we next consider whether the 1967-2011 CR files were improperly withheld as of November 2015. In May 2015, an injunction was issued enjoining and ordering the

CPD "in connection with *any* Freedom of Information Act requests, not to release any Complaint Register Files (CR Files) more than four years old as of the date of the request." Given that the CPD implicitly denied Mr. Green's FOIA request in November 2015—when it failed to respond to the request—the CPD maintains that, therefore, it did not improperly withhold the CR files prior to November 2011. We agree.

¶ 25 The supreme court in *In re Appointment of Special Prosecutor* examined the relationship between a FOIA request that was at odds with a court-ordered injunction. In that case, our supreme court, relying on *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, 445 U.S. 375 (1980), held "where a circuit court with personal and subject-matter jurisdiction issues an injunction, the injunction must be obeyed, however erroneous it may be, until it is modified or set aside by the court itself or reversed by a higher court." *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 64. Therefore, our supreme court concluded that "a lawful court order takes precedence over the disclosure requirements of FOIA." *Id. ¶* 66.

¶ 26 In this case, it is undisputed that the trial court had personal and subject matter jurisdiction over the parties to the injunction. Accordingly, the CPD was required to obey the May 2015 injunction and could not release the 1967-2011 CR files when requested by Mr. Green in November 2015. It is immaterial that the injunction was subsequently vacated because, as discussed *supra* ¶¶ 22-24, we evaluate the public body's decision to withhold documents *at the time the body responded to the request*. Because the CPD did not improperly withhold the 1967-2011 CR files at the time of its (implicit) response, we conclude that the trial court improperly ordered the CPD to produce those files in 2020, pursuant to the original FOIA request.

¶ 27    For his part, Mr. Green argues that the injunction was void and did not have to be obeyed. But this argument rests on an erroneous reading of our decision in *Fraternal Order of Police*, 2016 IL App (1st) 143884. In that case, we overturned the May 2015 injunction. We held that there was no legal basis to issue an injunction prohibiting the release of CR files over four years old from the date of a FOIA request, as the collective bargaining agreement mandating such destruction of records over four years old violated FOIA and Illinois public policy. *Id.* ¶ 55. That ruling is *not* tantamount to a finding that the injunction was void. See *In re M.W.*, 232 Ill. 2d 408, 414-15 (2009) (void order is one entered by court lacking jurisdiction). Therefore, we reject Mr. Green's argument that the injunction was void and, thus, did not prohibit the CPD from releasing the requested files.

¶ 28    Because we conclude that the trial court erred in ordering the CPD to produce the 1967-2011 CR files pursuant to the original request, we need not determine whether the court also erred in refusing to allow the CPD to belatedly raise FOIA's undue burden exemption.

¶ 29                                    CONCLUSION

¶ 30    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

¶ 31    Reversed.

¶ 32    PRESIDING JUSTICE DELORT, dissenting:

¶ 33    This case concerns what a court should do when a public body denies a Freedom of Information Act (FOIA) request, but the public body is under a court order to not release the requested records. As our supreme court explained in *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 66, "a lawful court order takes precedence over the disclosure requirements of FOIA." Thus, a public body may refuse disclosure of the documents when a court order bars their

release. This case presents a question not resolved in *In re Appointment of Special Prosecutor*, which is whether a requestor has a remedy if a court is in the midst of hearing a lawsuit seeking release of public records and the injunction upon which the public body had relied has now been vacated. The majority concludes that because the public body did not "improperly withhold" the documents in first instance (see 5 ILCS 140/11(d) (West 2018)), the circuit court erred in requiring the City to release records to Green. While everyone agrees that there is no longer any court order in place barring disclosure of the public records Green seeks, he must now start over with a new FOIA request and return to the "back of the line." This not only delays the disclosure of documents to Green, it allows the City to assert exemptions that it failed to raise in the first instance. I respectfully disagree with this result.

¶ 34    The Illinois FOIA contains a detailed, explicit declaration of legislative intent. See *id.* § 1. This declaration explains that it is the public policy of Illinois that: (1) "all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees"; and (2) "access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.* It further states:

> "Restraints on access to information, to the extent permitted by this Act, are
> limited exceptions to the principle that the people of this State have a right to full
> disclosure of information relating to the decisions, policies, procedures, rules,
> standards, and other aspects of government activity that affect the conduct of

government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle. This Act shall be construed to require disclosure of requested information as expediently and efficiently as possible ***." *Id.*

¶ 35 When construing a statute, a court "may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 20 (citing *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15). As our supreme court has recently explained:

"We note at the outset that the primary goal in construing a statute is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the language of the statute itself. [Citation.] But a court will not read language in isolation; it will consider it in the context of the entire statute. [Citation.] It is also proper to consider not only the language of the statute but the reason for the law, the problem sought to be remedied, the goals to be achieved, and the consequences of construing the statute one way or another. [Citation.] Additionally, we must presume that the legislature did not intend to produce absurd, inconvenient, or unjust results." *Carmichael v. Laborers' & Retirement Board Employees' Annuity & Benefit Fund*, 2018 IL 122793, ¶ 35.

¶ 36 When it denied Green's request, the City of Chicago correctly honored the injunction barring release of the records in question. However, by the time the circuit court heard Green's lawsuit, the injunction had been vacated, and it no longer barred City from releasing the records.

The City admits that it failed to respond to Green's FOIA request, and its failure to do so is rather inexplicable. Had the circuit court ruled in favor of the City, it would have, in essence, revived an injunction from another case that was no longer in force or effect. That result would have been directly at odds with the explicit purposes of FOIA, which favor "expedient[ ] and efficient[ ]" disclosure. 5 ILCS 140/1 (West 2018). It would also violate the principle, outlined in *Carmichael*, that a statute should not be construed to obtain an absurd result.

¶ 37    While Illinois courts generally look to cases involving the federal Freedom of Information Act when construing the parallel state law (see *supra* ¶ 22 n.1), that rule is not inflexible. Unlike the Illinois FOIA, the federal FOIA does not contain a declaration of legislative purpose, much less one as robust as the one contained in section 1 of the Illinois FOIA. Compare 5 ILCS 140/1 (West 2018) with 5 U.S.C. § 552 (2018). While federal courts have looked to the legislative history of the federal FOIA to discern that Congress intended to promote disclosure by enacting the federal FOIA (see, *e.g.*, *Milner v. Department of the Navy*, 562 U.S. 562, 565 (2011)), they were not construing a law with an expansive declaration of intent such as that contained in the Illinois FOIA. Therefore, I do not find authorities such as *Bonner*, *American Civil Liberties Union*, or *Lesar* to be conclusive as to the issue presented here. See *supra* ¶¶ 22-23.

¶ 38    Construing the "improperly withheld" language in FOIA in light of its guiding principles promoting disclosure of public records leads me to the conclusion that Green was entitled to a remedy under FOIA. Therefore, I do not believe that the circuit court erred in requiring the City to disclose the records in question. I would affirm the judgment below and require the City to disclose the records which Green seeks.

**No. 1-20-0574**

| | |
|---|---|
| **Cite as:** | *Green v. Chicago Police Department*, 2021 IL App (1st) 200574 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-CH-17646; the Hon. Alison C. Conlon, Judge, presiding. |
| **Attorneys for Appellant:** | Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Elizabeth Mary Tisher, Assistant Corporation Counsel, of counsel), for appellant. |
| **Attorneys for Appellee:** | Jaime Orloff Feeney, of Ropes & Gray LLP, and Jared Kosoglad, of Jared S. Kosoglad, P.C., both of Chicago, for appellee. |